FARM BUREAU MUTUAL
INSURANCE COMPANY,
Appellee,

v.

Clyde E. MILNE, Appellant.

No. 86–1427.

Supreme Court of Iowa.

May 11, 1988.

Morris L. Eckhart of Milroy and Eckhart, Vinton, for appellant.

David J. Dutton of Mosier, Thomas, Beatty, Dutton, Braun & Staack, Waterloo, for appellee.

William E. Timmons, Jeffrey A. Boehlert, and Ronald M. Rankin of Patterson, Lorentzen, Duffield, Timmons, Irish, Becker & Ordway, Des Moines, for amicus curiae Nat. Ass'n of Independent Insurers.

Considered by McGIVERIN, C.J., and HARRIS, CARTER, NEUMAN and ANDREASEN, JJ.

NEUMAN, Justice.

This appeal involves a dispute between an insurer, plaintiff Farm Bureau Mutual Insurance Company (Farm Bureau) and its insured, defendant Clyde Milne. Farm Bureau paid prejudgment interest in excess of Milne's policy limits in order to settle three lawsuits. The sole question is whether Farm Bureau was required, legally or contractually, to pay such sums on Milne's behalf. The district court concluded it was not. We affirm.

I. This case reaches us on Milne's appeal from an adverse summary judgment. Familiar rules guide our determination whether resolution of a controversy by way

of summary judgment is proper. We review them briefly.

Summary judgment is appropriate if there appears no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Iowa R.Civ. P. 237(c); *Knapp v. Simmons*, 345 N.W.2d 118, 121 (Iowa 1984). The moving party has the burden to show the nonexistence of a material fact. *Knapp*, 345 N.W.2d at 121. Every legitimate inference that can be reasonably deduced from the evidence should be afforded the party resisting a summary judgment motion, and a fact question is generated if reasonable minds could differ on how the issue should be resolved. *Northrup v. Farmland Indus. Inc.*, 372 N.W.2d 193, 195 (Iowa 1985). If the conflict in the record concerns only the legal consequences flowing from undisputed facts, entry of summary judgment is proper. *Jacobs v. Stover*, 243 N.W.2d 642, 643 (Iowa 1976). With these principles in mind, we look at the undisputed record made before the district court.

In March 1983, Milne was the driver of one of two cars involved in a serious accident. Milne had been drinking. Two people in the other vehicle died, including a pregnant woman whose fetus did not survive. Two other passengers were seriously injured. Milne pled guilty to two counts of involuntary manslaughter and was incarcerated.

The victims named Milne in three separate personal injury and wrongful death actions. Milne's automobile insurance policy with Farm Bureau provided coverage limits of $100,000 per person or $300,000 per occurrence. Farm Bureau took up Milne's defense in the three suits.

For purpose of settlement negotiations, the suits were consolidated. The victims' representatives demanded $427,500 for release of all claims against Milne. They demanded that Milne personally contribute toward settlement and that Farm Bureau pay "pre-judgment interest" in excess of its policy limits.

In December 1985, Farm Bureau and Milne acceded to these demands, memorializing in writing their own agreement concerning payment. Because the agreement forms the basis for this lawsuit, we think it important to set out the pertinent parts here:

4. MILNE has agreed to pay $55,000.00 of his personal funds toward said settlement figure and has demanded that FARM BUREAU pay the remaining $372,500.00; MILNE'S demand being based on his allegations that FARM BUREAU is responsible for prejudgment interest over and above its stated limits of liability.

5. FARM BUREAU denies that it is liable for any sums over its stated limits of liability (unless expressly stated in the policy of insurance); however, FARM BUREAU has agreed to tender the sum of $372,500.00 toward the settlement of the aforementioned claims.

6. FARM BUREAU and MILNE agree that the Plaintiffs' settlement demand of $427,500.00 is a fair and reasonable settlement figure for the aforementioned legal action and should be accepted to protect MILNE from the personal liability which would result from a verdict in excess of the settlement demand.

NOW THEREFORE, it is agreed as follows:

A. FARM BUREAU and MILNE will accept the Plaintiffs' settlement demand of $427,500.00, and said settlement shall be paid by respective contributions of $372,500.00 and $55,000.00.

B. By paying $72,500.00 over its stated limits of liability and entering into this Agreement, FARM BUREAU is not waiving any right to disclaim liability for, and seek reimbursement of, payments exceeding its contractual obligations under policy # 742826 against MILNE.

C. By paying $55,000.00 of his personal funds and entering into this Agreement, MILNE is not waiving any rights or claims which he might have against FARM BUREAU.

In January 1986, Farm Bureau commenced this action for declaratory judgment of the rights of the parties under their contract of insurance and recovery of

the $72,500 prejudgment interest paid in excess of Milne's policy limits. Milne's answer alleged affirmative defenses of breach of contract, comparative negligence, adequate remedy at law, unconscionability, unclean hands, and voluntariness of the $72,500 payment. Milne also counterclaimed for actual and punitive damages resulting from Farm Bureau's alleged bad faith, breach of contract, and emotional distress.

Farm Bureau moved for summary judgment. Based on the foregoing facts and the written contracts between the parties, Farm Bureau claimed the court could determine as a matter of law whether it was obligated to pay prejudgment interest exceeding the limits of its liability. In resistance, Milne alleged summary judgment was improper, claiming the existence of disputed facts concerning the meaning of the December 1986 settlement agreement; Farm Bureau's control over settlement negotiations; propriety of Farm Bureau's presettlement actions; and Farm Bureau's negligence, bad faith, breach of contract or other action barring it from equitable relief.

Viewing the record in the light most favorable to Milne, we agree with the trial court's determination that the meaning of the December 1986 document can be readily discerned from its words. *See Cairns v. Grinnell Mut. Reinsurance Co.*, 398 N.W.2d 821, 824 (Iowa 1987). The remaining facts alleged by Milne, though pertinent to his counterclaim, do not materially affect the narrow issue posed by the motion for summary judgment: Farm Bureau's legal or contractual obligation to pay prejudgment interest. That issue was ripe for determination under rule 237(c). Accordingly, we proceed to consider whether the district court properly entered partial summary judgment for Farm Bureau while preserving Milne's counterclaim for trial.

II. There are three components to Milne's challenge to the district court's legal conclusion that Farm Bureau was not liable for the payment of prejudgment interest in excess of Milne's policy limits. First, Milne claims an insurer is required to pay interest on the entire amount of the judgment. Second, Iowa Code section 535.3 (1985) requires an insurer to pay prejudgment interest. Third, Farm Bureau is estopped from recovering sums previously paid in excess of Milne's policy limits. We shall consider the arguments in turn.

■ A. *Interest on the entire judgment.* Milne cites extensive authority for the proposition that an insurer is required to pay interest on the entire judgment of its insured, even when the judgment exceeds policy limits, or even if the total payments exceed policy limits. *See, e.g., United Serv. Auto. Ass'n v. Russom*, 241 F.2d 296, 303 (5th Cir.1957); *Powell v. T.A. & C. Taxi, Inc.*, 104 N.H. 428, 432, 188 A.2d 654, 656 (1963); *Germer v. Public Serv. Mut. Ins. Co.*, 99 N.J.Super. 137, 144, 238 A.2d 713, 717 (1967); *Western Casualty & Sur. Co. v. Preis*, 695 S.W.2d 579, 586 (Tex.App.1985); *McPhee v. American Motorists Ins. Co.*, 57 Wis.2d 669, 682, 205 N.W.2d 152, 160 (1973). In each case cited, the court was construing the same standard insurance policy interest clause found in Milne's policy under which the insurer agrees to make supplementary payments exceeding the limits of liability for:

> [A]ll interest on the amount of any judgment which accrues after the entry of judgment and until the company has paid, tendered, or deposited in court such part of such judgment as does not exceed the limits of the company's liability thereon.

These courts have uniformly imposed liability on the insurer for postjudgment interest on the entire damage award, regardless of policy limits with the insured. *See also* 8A J. Appleman, *Insurance Law and Practice* § 4894.25, at 77–79 (1981). Farm Bureau argues, however, that none of this authority answers the question of an insurer's liability for interest accruing *prior* to judgment. We agree. No matter what our position might be with regard to an insurer's liability for interest accruing after entry of judgment which exceeds policy limits, such a determination avails Milne nothing in the current controversy.

■ B. *Iowa Code section 535.3.*
Milne next argues that because Iowa Code section 535.3 entitles a plaintiff to recover interest from commencement of the lawsuit, an insurer who is obligated to pay interest on the "entire judgment" must therefore pay all the prejudgment interest, even if the accrued amount, when added to the verdict or settlement, exceeds the policy limits. We think the proposition begs at least two fundamental questions: As between an insured and its insurer, who is liable to a successful plaintiff for the payment of statutorily mandated prejudgment interest? And if those sums exceed the insurer's obligation under the insurance contract, do public policy reasons exist to justify rewriting the contract to require payment by the insurer? These are questions of first impression in Iowa and we look to other jurisdictions for guidance.

In answer to the first question, Farm Bureau concedes that although Milne's policy is silent on the question, the company is liable for such sums up to the amount of the applicable policy limits. This is because interest on unliquidated claims constitutes an element of compensatory damages. *See Black v. Minneapolis & St. Louis R.R. Co.,* 122 Iowa 32, 37, 96 N.W. 984, 986 (1903); *accord Chamberlain v. City of Des Moines,* 172 Iowa 500, 502–504, 154 N.W. 766, 767 (1915). This rationale has been adopted by a majority of jurisdictions faced with the interpretation of a statute comparable to section 535.3, leading such courts to limit an insurer's liability for prejudgment interest to the coverage afforded by the damage clause under the policy. *See Quin v. Ha,* 591 P.2d 1281, 1291 (Alaska 1979); *Houser v. Eckhardt,* 35 Colo.App. 155, 160–61, 532 P.2d 54, 56–57 (1974); *Nunez v. Nationwide Mut. Ins. Co.,* 472 A.2d 1383, 1384–85 (Me.1984); *Walker v. Walker,* 108 N.H. 341, 342, 235 A.2d 520, 521 (1967); *LaPlant v. Aetna Casualty & Sur. Co.,* 107 N.H. 183, 185–86, 219 A.2d 283, 284–85 (1966); *Iskander v. Columbia Cement Co.,* 192 N.J.Super. 114, 122, 469 A.2d 103, 107 (1983); *Kotzian v. Barr,* 81 N.J. 360, 366–67, 408 A.2d 131, 134 (1979); *Bossert v. Douglas,* 557 P.2d 1164, 1168 (Okla.App.1976); *Factory Mut.*

*Liab. Ins. Co. v. Cooper,* 106 R.I. 632, 638–39, 262 A.2d 370, 373–74 (1970).

Only Michigan has rejected this approach, reasoning that "the rationale of these decisions would subvert the unequivocal intent of the Legislature in enacting the Prejudgment Interest Statute, to allow interest from the date of filing the complaint." *Denham v. Bedford,* 407 Mich. 517, 535 n. 10, 287 N.W.2d 168, 174 n. 10 (1980). In *Denham,* the Michigan Supreme Court concluded that an insurer's liability for prejudgment interest

> may act as an incentive to the insurer to promptly settle a meritorious claim. Without such an incentive, the insurer may refuse to settle a meritorious claim in hopes of forcing plaintiff to settle for less than the claim's true value. The insurer risks nothing. Even if protracted litigation results, the insurer will only be liable for its policy limits—all the while reaping a tidy sum from its investment of the policy limits.

*Id.* at 536, 287 N.W.2d at 175.

We share the Michigan court's concern for the prompt settlement of meritorious claims but we are convinced that it ignores the insurer's risk of liability for compensatory and punitive damages for bad faith refusal to promptly settle a claim. *See Pirkl v. Northwestern Mut. Ins. Ass'n,* 348 N.W.2d 633, 635 (Iowa 1984); *Kooyman v. Farm Bureau Mut. Ins. Co.,* 315 N.W.2d 30, 33–34 (Iowa 1982); *Ferris v. Employers Mut. Casualty Co.,* 255 Iowa 511, 517, 122 N.W.2d 263, 267 (1963). Moreover, we are unwilling to take the extraordinary step of rewriting the parties' insurance contract in order to achieve the salutory goal of minimizing protracted litigation. To do so would "require the insurer to bear the burden of a risk it has not assumed." *Quin v. Ha,* 591 P.2d at 1291. Persuaded by countervailing policy considerations, the court in *Quin* observed that:

> The effect of allowing prejudgment interest in an amount beyond policy limits would be to force an insurance company to acquiesce to a plaintiff's demand at an early stage of the proceedings where it may have a meritorious defense, rather

than run the risk of paying a large amount of prejudgment interest due to the delays engendered by crowded dockets should the plaintiff eventually recover.

*Id.* (quoting *Dittus v. Geyman,* 68 Mich. App. 433, 443, 242 N.W.2d 800, 805 (1976)).

On balance, we are inclined toward the majority rule which would limit an insurer's liability for prejudgment interest. Like the district court, we do not think sufficiently compelling public policy reasons exist to justify overriding the plain allocation of responsibilities expressed in the parties' contract. Section 535.3 clearly manifests a legislative intent to compensate injured plaintiffs for delay in receiving their just compensation. But in the absence of an express policy provision or circumstances which justify shifting this responsibility from the insured to the insurer, we think the plain language of the policy limiting the insurer's liability for such damages must prevail. The district court was correct in so holding.

■ C. *Estoppel.* As an alternative theory of relief, Milne contends that Farm Bureau voluntarily paid the $72,500 in prejudgment interest and should now be estopped from seeking to recover it. In support of his argument, Milne cites *National Fire Insurance Company v. Butler,* 260 Iowa 1159, 1162, 152 N.W.2d 271, 273 (1967), for the proposition that an insurer cannot recover on a claim paid with full knowledge of all facts, in the absence of fraud or improper conduct. The case, however, and the principles it announces, are clearly distinguishable from the case before us.

In *National Fire,* the insurer paid a claim after its agent fully investigated the cause of an explosion but failed to verify that its policy with the insured covered the damage. Later the insurer claimed mistake as the basis for recovering what it had paid. The court discussed the general rule that payments made under a mistake of law but with full knowledge of the facts may not be recovered. *Id.* at 1162, 152 N.W.2d at 273. Concluding that payment itself implied acceptance of liability by the insurer, we affirmed the trial court's denial of recovery based on insufficient proof of mistake, either at law or in fact. *Id.* at 1164, 152 N.W.2d at 274.

By contrast, the case before us presents no question of mistake. Whether an insurer would be liable for prejudgment interest in excess of its policy limits was a question as yet unanswered by this court. The settlement agreement executed by the parties in December 1987 preserved each party's right to seek judicial resolution of the issue. Meanwhile, Farm Bureau was confronted with a duty to act in the best interest of its insured. *See Kooyman v. Farm Bureau Mut. Ins. Co.,* 315 N.W.2d at 33–34. Documents offered in resistance to the motion for summary judgment reveal indisputably that trial of the wrongful death and personal injury actions would likely result in verdicts substantially in excess of policy limits and that the settlement proposed was a reasonable one. Thus Farm Bureau could either pay under protest, as it did, or refuse to pay and expose itself and its insured to intolerable risks. In view of these circumstances, we find no merit in Milne's contention that Farm Bureau, having prevailed on its legal position, should now be estopped from recouping from Milne those sums advanced on his behalf which he is legally obligated to pay. The district court's entry of judgment to effect this reimbursement was not in error.

III. In conclusion, we hold that under its insurance policy with Milne, Farm Bureau had no contractual or legal obligation to pay prejudgment interest in excess of policy limits. Accordingly, the district court's summary order entering judgment for Farm Bureau in the sum of $72,500 and preserving Milne's counterclaim is hereby affirmed in its entirety.

AFFIRMED.