**FIRST NATIONAL BANK IN FAIRFIELD, Appellee,**

v.

**Michal KENNY, William C. Fisher II, and Realty Technologies Corporation, Defendants,**

**and**

**Raymond M. Kobayashi, Jr., and Gloria A. Kobayashi, Appellants.**

No. 89–434.

Supreme Court of Iowa.

April 18, 1990.

Ed Kelly of Kelly & Morrissey, Fairfield, for appellants Kobayashis.

Craig R. Foss of Foss, Kuiken & Gookin, P.C., Fairfield, for appellee.

Considered by HARRIS, P.J., and SCHULTZ, CARTER, SNELL, and ANDREASEN, JJ.

SNELL, Justice.

The Kobayashis appeal from summary judgment awarding the First National Bank in Fairfield (Bank) title to certain real estate based on a foreclosure action. We reverse and remand.

The Kobayashis brought suit against William C. Fisher (Fisher), then a resident of Hawaii, in late 1981, based on Fisher's defaults on a debt to the Kobayashis. In early 1984 the Hawaii Circuit Court granted a deficiency judgment to the Kobayashis, and subsequent to a sale of Fisher's collateral entered a second deficiency judgment for the unsecured portion of the debt.

Prior to final judgment, Fisher moved to Fairfield, Iowa and became involved in the real estate business there. On May 3, 1984, shortly after the first deficiency judgment was entered against Fisher in Hawaii, he entered into a purchase agreement with Raymond and Naoma Picken (Pickens) for business property in Fairfield. The contract was first filed on October 3, 1984.

On June 4, 1985, approximately one year after the Pickens and Fisher had entered into the land contract, a new contract was drawn up. In this agreement, the Pickens agreed to sell the land to Realty Technologies Corporation (RTC) and one Michal Kenny (Kenny). Each of these parties was to have an undivided fifty percent interest in the property. Fisher signed the contract on behalf of RTC, acting in his capacity as president of the firm. In an attachment to the contract, the parties purported to "rescind, revoke and hold for naught that Purchase Agreement dated May 3, 1984 and filed October 2, 1984." A warranty deed was executed and kept in escrow at the Iowa State Bank & Trust Company (ISB) pending final payment on the contract.

In September of 1985 the Kobayashis filed suit in Iowa, seeking to enforce the foreign deficiency judgment. The property held by Fisher and RTC was placed on the lis pendens. In March, 1986, notice of forfeiture of the contract between the Pickens, sellers, and RTC and Kenny, buyers, was served on Fisher in his capacity as president of RTC. In April 1986 notice of forfeiture was served upon Kenny by publication.

A warranty deed to the property was then granted to Kenny by Pickens on June 26, 1986. A mortgage from Kenny to ISB was recorded June 27, 1986. On July 18, 1986, a mortgage granted by Kenny to the First National Bank in Fairfield was recorded. This mortgage secured a loan for the purchase price taken out in the names of Michal Kenny and William C. Fisher. The property was at that time subject to a first mortgage with ISB, and both banks were involved in imposing conditions on the loan secured by Kenny's mortgage.

Default judgment on the Kobayashi suit against Fisher and RTC (as well as others) was entered on July 26, 1988. In its judgment, the district court found against Fisher individually and against RTC as Fisher's alter-ego. Judgment in rem against the property here involved was also entered. The court ruled that Fisher's various real estate transactions, carried out through RTC and other closely held corporations, were an attempt to defraud his creditors by placing the property out of their reach. The court further found that Fisher had placed various parcels of land, including the property here at issue, in the hands of "third persons" in an attempt to shield the property from levy by his creditors. Specifically, the trial court found that Fisher had caused the property in question to be titled in Kenny's name. It found that Kenny subsequently gave a power of attorney with regard to the property to Fisher, and that Fisher had actual possession of the property. The court ruled that "[a]ny interests of defendants [Fisher and various

corporations] or third parties acquired in said property from and after September 20, 1985 [the date of filing of Kobayashis' action and lis pendens] are junior and inferior to those of [the Kobayashis]."

The Kobayashis attempted attachment and levy on the property in Kenny's name shortly before the entry of the default judgment. Kenny appeared by her attorneys on July 18, 1988, challenging attachment and levy on property held in her name. The court denied Kenny's motion. The Kobayashis, in short, had an apparently valid judgment lien on the property.

In early November 1988, the Bank filed a foreclosure action on the property. The Bank alleged that this was a simple foreclosure action against Kenny, that Fisher had no interest in the property, and that default had occurred. Neither Kenny nor Fisher disputed the default. The Kobayashis, on the other hand, took issue with the foreclosure, claiming that Fisher, not Kenny, was the real party in interest as regards the property and that their judgment lien took precedence over the Bank's mortgage.

Summary judgment was granted in favor of the Bank on February 22, 1989. The court found that the promissory note to the Bank entered into by Fisher and Kenny was secured by a mortgage on the property interests of Kenny. It found that any interests that Fisher had in the property were terminated by the forfeiture of the second contract with the Pickens. As a result, it determined that no genuine issue of material fact existed, and granted the Bank's motion.

■ The issue presented by this appeal is whether the Kobayashis' allegations that Kenny's title to the property was a sham devised to protect the property from Fisher's creditors and that Fisher was the "real owner" of the property give rise to an issue of material fact sufficient to defeat summary judgment. Summary judgment may be granted when there are no genuine issues of material fact in dispute and the moving party is entitled to judgment as a matter of law. *Froning & Deppe Inc. v. South Story Bank and Trust Co.*, 327 N.W.2d 214, 215 (Iowa 1982). The party moving for summary judgment has the burden of showing the nonexistence of an issue of material fact. *Farm Bureau Mut. Ins. Co. v. Milne*, 424 N.W.2d 422 (Iowa 1988). Even where facts are not in dispute, however, summary judgment is inappropriate where rational minds could draw different inferences from them. *Colonial Baking Co. of Des Moines v. Dowie*, 330 N.W.2d 279, 282 (Iowa 1983). In considering the motion, the court is obliged to examine the record in the light most favorable to the nonmoving party. *Knapp v. Simmons*, 345 N.W.2d 118, 121 (Iowa 1984). Summary judgments are granted when the pleadings, answers to interrogatories, admissions on file, affidavits, depositions and other pretrial documents show there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Blessing v. Norwest Bank Marion, N.A.*, 429 N.W.2d 142, 143 (Iowa 1988); *see also Tasco, Inc. v. Winkel*, 281 N.W.2d 280 (Iowa 1979).

■ The essence of the Kobayashis' argument is that Fisher purchased the property on May 3, 1984, and despite rescission of the contract underlying that purchase, the forfeiture of a subsequent contract, and the deed issued in Kenny's name, continued to hold the property until November of 1988. We are confronted here with the Kobayashis' assertions that both the July 1985 land contract and the June 1986 deed transfer to Kenny were arranged by Fisher to assure that property in which he held the real interest was shielded from creditors.

The Kobayashis advanced these same allegations in obtaining their judgment lien against the property, which was granted in default. That judgment cannot, of course, be used offensively here since the bank was not a party to the suit upon which default was granted. *See, e.g., Brosamle v. Mapco Gas Prods., Inc.*, 427 N.W.2d 473, 475 (Iowa 1988). The Kobayashis argue, however, that their judgment lien, based upon the default judgment, gives them a superior interest to that of the bank.

The Kobayashis advanced several facts in support of their contention that the rescission of the May 1983 contract and entry into the June 1985 contract between RTC and Kenny on one hand and the Pickens on the other was a fraud designed to conceal Fisher's interest in the property from creditors. First, they note Fisher's signature on the contract, acting in his capacity as president of RTC, and assert that RTC was nothing more than Fisher's alter-ego. In support of the latter contention they incorporated their affidavit in support of default judgment to their resistance to the Bank's motion for summary judgment. The affidavit avers that RTC was undercapitalized, did not have independent sets of books, and that corporate finances were not kept separate from those of Fisher. From this, they conclude that the contract by which the Pickens granted an undivided fifty percent interest in the property to RTC was in fact a grant to Fisher.

The Kobayashis argue that both Kenny and Fisher were parties to the loan secured by the 1986 deed from the Pickens to Kenny. In addition, an affidavit by the deputy sheriff, attached to the Kobayashis' resistance to the motion for summary judgment tends to support the inference that the transaction was a means of concealing property. According to the affidavit, when the deputy served a writ of general execution and levied upon the property, Kenny objected. She stated that she did not understand why she was being served, that the property belonged to Fisher and that she had just let him put it in her name.

Viewing this record in the light most favorable to the Kobayashis, we conclude that there is some evidence of collusion on the part of Kenny and Fisher to protect the property from Fisher's creditors. The issue is whether the 1985 transactions to RTC and Kenny and the subsequent 1986 forfeiture worked to destroy Fisher's interests in the property. The Kobayashis contend that they did not, arguing that Kenny's subsequent purchase of the property from the Pickens was a "secret redemption," and that Fisher's interests were in fact maintained by the deed to Kenny.

There is no record of a redemption either by Fisher or by Kenny. The Kobayashis' contention is supported in the record by a bank memorandum dated June 20, 1986. It is not entirely clear whether the memo was generated by ISB or the Bank. It does, however, provide some insight into the dealings surrounding the forfeiture and subsequent purchase of the property by Kenny. The memo stated that Fisher and Kenny owed the Pickens $45,000 on the contract, and that the bank had agreed to loan Fisher $20,000 in order to pay off the Pickens. The memo further stated, "Due to problems Mr. Fisher is having on other deals, the property will be in the name of Michal Kenny; however, Chris Fisher will sign both the note and the mortgage." There is sufficient evidence here to infer that the transaction that placed the property into Kenny's hands was in fact a way by which Fisher maintained control. Based upon this record, we conclude that rational minds could draw different inferences from these facts. The Kobayashis are entitled to the opportunity to prove at trial their assertions to priority of lien against the mortgaged property. The Bank was not entitled to judgment as a matter of law. Accordingly, the decision of the district court is reversed and the case remanded for proceedings consistent with this opinion.

REVERSED AND REMANDED.