ELLSWORTH–WILLIAM COOP-
ERATIVE CO., Plaintiff–Ap-
pellee/Cross–Appellant,

v.

UNITED FIRE & CASUALTY CO.,
Defendant–Appellant/Cross–
Appellee.

No. 90–835.

Court of Appeals of Iowa.

Sept. 24, 1991.

Timothy McCarthy II of Cook, Gotsdiner, McEnroe & McCarthy, Des Moines, for defendant-appellant/cross-appellee.

Gary Ordway and Mark Roeder of Patterson, Lorentzen, Duffield, Timmons, Irish, Becker & Ordway, Des Moines, for plaintiff-appellee/cross-appellant.

Heard by HAYDEN, P.J., and SACKETT and HABHAB, JJ.

HABHAB, Judge.

United Fire & Casualty Company issued a comprehensive general liability insurance policy to Robert Meyerhoff. This policy was in effect at all times material to this action.

In 1982 Meyerhoff entered into a contract with Ellsworth–Williams Cooperative. The contract provided Meyerhoff would construct four large grain storage bins and various overhead grain conveying equipment necessary to operate these bins. This overhead conveying system was necessary to operate three other preexisting bins.

After the bins were loaded with grain, Ellsworth discovered the grain bin floors were defective. Thus it was necessary to remove all grain from the bins to keep the grain from spoiling and to repair the four bins.[1]

On January 24, 1985, Ellsworth sued Meyerhoff and other contractors involved in the bin construction. United Fire, under its policy of insurance, represented Meyerhoff. United Fire wrote a letter on March 1, 1985, however, reserving its rights to deny coverage.

In the meantime, United Fire instituted two separate declaratory judgment actions in an attempt to deny coverage. In the first action, United Fire alleged Meyerhoff had refused to cooperate. The district court rejected this contention. In the second declaratory judgment action, United Fire claimed certain provisions in its policy excluded coverage. This latter declaratory judgment action was consolidated with this action.

In the underlying liability case against Meyerhoff and the other defendants, the parties reached a stipulation concerning the amount of damages incurred and who caused those damages. The parties entered into a Stipulation for Judgment on June 27, 1988. Meyerhoff confessed liability. The stipulation apportioned damages which totaled $212,161.44. Four of the defendants paid a combined $100,000 towards the damages. This amount was first applied to cost of repairs and resultant interest. The remainder was applied to loss of use of the bins.

Ellsworth then filed this third-party action against Meyerhoff's insurer, United Fire, for the remaining damages. According to the stipulation, Ellsworth sustained damages of $62,356.11 for removal of the grain from the four bins negligently constructed by Meyerhoff. In addition, it was agreed Ellsworth lost an additional $36,051.58 in revenues not covered by the aforementioned settlement for the loss of use of the four bins while they were being repaired. Finally, because the overhead conveying system was inoperable during

---

1. The cost of the *repair* of the four bins is not involved in this appeal. The interested parties agree there is no insurance coverage under the United Fire insurance policy for such repair costs.

the repairs, it was further agreed Ellsworth lost $13,144.47 not covered by the aforementioned settlement for the loss of use of the three preexisting grain bins. These figures include interest to May 10, 1988.

The parties filed summary judgment motions. The trial court concluded the insurance policy provided coverage for the cost, including interest, of removing the grain from the four bins Meyerhoff had negligently constructed. Following Ellsworth's Iowa Rule of Civil Procedure 179(b) motion, the trial court ruled the policy also covered the loss of the use of the three preexisting bins rendered unusable because of the defective overhead grain conveyance system installed by Meyerhoff. The court concluded, however, the policy did not cover loss of use of the four bins Meyerhoff had constructed. From this latter ruling, Ellsworth cross-appeals.

The trial court also ruled United Fire had properly reserved its right to contest coverage. It held the first declaratory judgment action did not render United's position meritless under res judicata or claim preclusion. Ellsworth cross-appeals both these issues.

Alternatively, the court held even if United's policy did not cover the cost of removing the grain, United was estopped from denying coverage based on the letter written by its claims adjuster in 1983. Due to our analysis in this case, we find it unnecessary to consider this estoppel issue.

From these rulings, United Fire appeals. Ellsworth cross-appeals.

### I. *Summary Judgment.*

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." Iowa R.Civ.P. 237(c); *see Farm Bureau Mut. Ins. Co. v. Milne,* 424 N.W.2d 422, 423 (Iowa 1988). The moving party has the burden to show the nonexistence of a material fact, *Milne,* 424 N.W.2d at 423, and the evidence must be viewed in the light most favorable to the

resisting party, *Thorp Credit, Inc. v. Gott,* 387 N.W.2d 342, 343 (Iowa 1986). The procedure is functionally akin to a directed verdict, and every legitimate inference that reasonably can be deduced from the evidence should be afforded the resisting party. *Id.; Sherwood v. Nissen,* 179 N.W.2d 336, 339 (Iowa 1970). A fact issue is generated if reasonable minds can differ on how the issue should be resolved, but if the conflict in the record consists only of the legal consequences flowing from undisputed facts, entry of summary judgment is proper. *Gott,* 387 N.W.2d at 343; *Milne,* 424 N.W.2d at 423. If the motion is properly supported, however, the resisting party "must set forth specific facts showing that there is a genuine issue for trial." Iowa R.Civ. P. 237(e). The language of our rule and case law are substantially similar or identical to that of rule 56 of the Federal Rules of Civil Procedure, *see, e.g., Matsushita Elec. Indust. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 585–88, 106 S.Ct. 1348, 1355–57, 89 L.Ed.2d 538 (1986), from which we may draw for guidance in interpreting our own rule, *Sherwood,* 179 N.W.2d at 339. We now turn to the facts, all of which appear to be undisputed, as viewed in a light most favorable to the party resisting the motion for summary judgment.

### II. *Reservation of Rights.*

Ellsworth contends United Fire failed to reserve its rights to deny coverage under the policy. Our review of the record, and in particular letters dated August 30, 1983 and March 1, 1985 to Meyerhoff, United Fire's insured, convinces us the trial court is correct in finding an adequate reservation of rights. These letters put the insured on notice certain claims may not be covered. They are not so vague and general as to be misleading or confusing. *See Meirthew v. Last,* 376 Mich. 33, 135 N.W.2d 353, 355 (1965).

The Michigan court in *Meirthew* held a letter from the insurer to the insured to be legally insufficient for a reservation of rights. However, the letter in that case is substantially different in content than the letters in the present case. The *Meirthew* letter merely stated: "the Company does

not waive any of its rights to rely upon the provisions of said policy, and does not waive any defense it may have to any claimed liability under said policy." *Id.* 135 N.W.2d at 355. In contrast, the letters here set out specific areas on possible non-coverage. The reservation here was sufficient to put the insured, Meyerhoff, on notice the possibility certain claims, including loss of use, may not be covered. We affirm on this issue.

### III. *Claim Preclusion.*

Ellsworth claims United Fire is estopped from relitigating issues it could have raised in its first declaratory judgment action. The estoppel, Ellsworth argues, arises from the doctrine of claim preclusion or res judicata.

■ "The doctrine of res judicata provides that a final judgment on the merits precludes a party from relitigating issues which were or could have been raised in that action." *Gail v. Western Convenience Stores*, 434 N.W.2d 862, 863 (Iowa 1989). "A party must litigate all matters growing out of its claim at one time rather than in separate actions." *Israel v. Farmers Mut. Ins. Co. Ass'n of Iowa*, 339 N.W.2d 143, 146 (Iowa 1983).

■ Principles of claim preclusion apply to declaratory judgment proceedings in much the same manner as in other litigation. *Fournier v. Illinois Cas. Co.*, 391 N.W.2d 258, 259 (Iowa 1986); 2 Vestal & Willson, *Iowa Practice*, § 65.02.10 at p. 173 (1991 Supp.).

Res judicata, in the sense of claim preclusion, applies only if the cause of action in the [prior] litigation was the same as the present action. A cause of action is the same when the asserted invasion of rights is the same. A plaintiff is not entitled to a second day in court simply by alleging a new ground of recovery for the same wrong. In order to determine whether the cause of action is the same, we examine the protected right, the alleged wrong, and relevant evidence.

\* \* \* \* \* \*

We conclude that, in the application of the foregoing principles to declaratory

judgment litigation, the extent of the claim which has previously been litigated must be determined pragmatically so as to include all rights which are reasonably related to the objective sought to be obtained by the declaratory judgment litigation. *We have recognized that, in seeking a declaration of rights under a written instrument, a party is not always required to litigate the full scope of all affected rights and obligations in a single proceeding.* In *Westway*, 314 N.W.2d at 401, we determined that, where different disputes under a lease matured at different times, separate claims may be brought. Similarly, in *In re Ditz's Estate*, 255 Iowa 1272, 1283–84, 125 N.W.2d 814, 821 (1964), we determined that the result of an action for a declaratory judgment seeking to attack a will for creating an illegal trust did not give rise to claim preclusion with respect to a subsequent claim involving testamentary capacity.

*Fournier*, 391 N.W.2d at 259–60 (citations omitted; emphasis added).

■ We conclude, after reviewing the facts and rulings in the two cases, this present declaratory judgment action is not precluded by the first. The first declaratory judgment action brought by United Fire was based on the cooperation clause of the insurance policy. United Fire was not contesting the extent of coverage, but rather whether it had a duty to continue to represent its insured. United Fire alleged its insured, Meyerhoff, had not adequately cooperated in discovery.

This case, in contrast, is premised on the coverage actually provided by the policy provisions and exclusions. It is essentially an action to construe the policy. Both the rationale and the pertinent issues are substantially different than in the first case. We conclude the trial court was correct in so distinguishing them. *See In re Ditz's Estate*, 255 Iowa at 1283–84, 125 N.W.2d at 821. We affirm the trial court on this issue.

### IV. *Interpretation of Insurance Contracts.*

■ We construe an insurance policy according to the parties' intention at the

time the contract was entered into. *Iowa–Des Moines Nat. Bank v. Insurance Co. of North America,* 459 F.2d 650, 654 (8th Cir.1972). We interpret the language from the viewpoint of an ordinary person, not a specialist or expert. *Witcraft v. Sundstrand Health & Disability Group Benefit Plan,* 420 N.W.2d 785, 790 (Iowa 1988). "An insurance policy is a contract of adhesion and therefore its provisions will be construed in a light most favorable to the insured." *City of Cedar Rapids v. Northwestern Nat. Ins. Co. of Milwaukee, Wis.,* 304 N.W.2d 228, 231 (Iowa 1981).

We strive to give effect to all the language of a contract. An interpretation which gives a reasonable, lawful, and effective meaning to all terms is preferred to an interpretation which leaves a part unreasonable, unlawful or of no effect.

\* \* \* \* \* \*

The doctrine of reasonable expectations states that objectively reasonable expectations will be honored even though painstaking study of the policy provisions would have negated those expectations. The doctrine obligates the court to ignore a policy exclusion if the exclusion: (1) is bizarre or oppressive; (2) eviscerates terms explicitly agreed to; or (3) eliminates the dominant purpose of the contract.

*Weber v. IMT Insurance Co.,* 462 N.W.2d 283, 286–89 (Iowa 1990).

With these principles in mind, we turn to the next issues.

### V. *Removal of Grain Costs.*

 United Fire claims the trial court erred in finding as property damage the cost of removal of grain from the damaged bins. It claims these items are intangible damages excluded under the policy provisions.

Looking at this issue as an ordinary person, we have no problem with finding the cost of removal of grain was property damage covered by the policy. Any other reading would eviscerate the policy coverage. *Id.; see also Minnesota Min. & Mfg. Co. v. Travelers Indem.,* 457 N.W.2d 175, 179–84 (Minn.1990).

Additionally, United Fire argues in its brief on appeal:

The definition of property damage quoted earlier in this Argument does not include removal costs. It covers injury of tangible property and its resultant loss of use and loss of use of tangible property. To include the cost of removal does not fit into the definition and it is clear by reading the definition.

We find United Fire's argument lacking in merit. Clearly, United Fire would be liable for the cost of the grain itself if the grain did spoil. This would be "injury of tangible property" covered by the policy. Additionally, such rotten grain would still have to be removed. Assumably, United Fire would then argue Ellsworth failed to mitigate damages by not taking measures to preserve the grain, such as removal. We agree with the trial court that under the circumstances here, there is coverage for the cost of the removal of the grain under the property damage clause of the policy. We affirm the trial court on this issue.

### VI. *Loss of Use of Grain Bins.*

 A. *Other Grain Bins.* In its second and final assignment of error, United Fire argues the loss of use of the three preexisting grain bins is excluded by the policy. It claims loss of use is not damage to tangible property. Rather, United Fire claims loss of use is an intangible item of damage, like loss of good will.

We look first to the insurance policy itself. The policy defines property damage as:

"Property damage" means (1) physical injury to or destruction of tangible property which occurs during the policy period, *including the loss of use thereof at any time resulting therefrom, or (2) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an occurrence during the policy period.* (Emphasis added.)

According to the policy, property damage *does include loss of use.* This definition directly contradicts United Fire's argument

on appeal. The terms of the policy, where used in their ordinary sense and in accord with the reasonable expectations of the parties, are controlling. We determine property damage, as defined, includes loss of use.

United Fire argues a policy exclusion applies to the loss of use. The pertinent exclusion reads:

This insurance does not apply:

\* \* \* \* \* \*

(m) to loss of use of tangible property which has not been physically injured or destroyed resulting from

(1) a delay in or lack of performance by or on behalf of the named insured of any contract or agreement or

(2) the failure of the named insured's products or work performed by or on behalf of the named insured to meet the level of performance, quality, fitness or durability warranted or represented by the named insured; *but this exclusion does not apply to loss of use of other tangible property resulting from the sudden and accidental physical injury to or destruction of the named insured's products or work performed by or on behalf of the named insured after such product or work have been put to use by any other person or organization other than an insured.* (Emphasis added.)

A reading of the plain language of the exception to the exclusion in subsection (2) appears to provide coverage in a case such as this. The preexisting three grain bins were not built by Meyerhoff. They thus qualify as "other tangible property." The physical injury to the named insured's products occurred after such product had "been put in use by any other person or organization other than an insured," namely, Ellsworth. Therefore, the plain language of the exception to the exclusion provides coverage for the loss of use of Ellsworth's other three grain bins.

Additionally, the plain language of the definition of property damage includes loss of use damages. United Fire's argument and purported exclusion are at odds with the plain language of its definition. Where there is ambiguity, the policy is construed in favor of the insured. We determine the policy does cover the loss of use of the other grain bins. We affirm the trial court on this issue.[2]

■ B. *Meyerhoff Grain Bins.* Ellsworth claims the trial court erred by not awarding compensation for the loss of use of the grain bins built by Meyerhoff. These bins are the ones with the defective floors. The trial court found these bins were excluded by other terms in the policy. We set out the pertinent exclusions:

This insurance does not apply:

\* \* \* \* \* \*

(n) to property damage to the named insured's products arising out of such products or any part of such products;

(o) to property damage to work performed by or on behalf of the named insured arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith;

We read exclusions (n) and (o) together with the definition of property damage set above in this opinion. Exclusions (n) and (o) explicitly exclude liability for property damage to the insured's products and to work performed by the insured. "Property damage" as defined by the policy includes loss of use. We consider the reasonable expectations of the parties and their intent in entering into this contract as well.

The policy at issue is entitled "General Comprehensive Liability Insurance." It does not purport to warrant Meyerhoff's work. In fact, the above exclusions, and other exclusions as well, expressly disclaim such warranty.

Neither party claims United Fire is liable under this policy for the repair costs of the defective grain bins. This exclusion of lia-

2. We have considered in our review only the exclusion provisions of the policy that are di- rected to our attention in the appellant's brief.

bility for property damage to the insured's products or work comported with the parties' general understanding of the coverage of this policy. This exclusion includes loss of use of the insured's products.

We determine the trial court's disallowance of compensation for loss of use of the bins constructed by Meyerhoff conforms to the explicit contract language, as well as the intentions and reasonable expectations of the parties. We affirm on this issue.

We determine other issues raised by the parties are either covered by our foregoing opinion or without merit. We affirm the trial court on all issues. Costs of this appeal are taxed to United Fire.

AFFIRMED.