**Beverly Marie DAVIS, Appellant,**

v.

**STATE of Iowa, Appellee.**

No. 93–232.

Court of Appeals of Iowa.

May 26, 1994.

Linda Del Gallo, State Appellate Defender, and Shari Barron, Asst. State Appellate Defender, for appellant.

Bonnie J. Campbell, Atty. Gen., Richard J. Bennett, Asst. Atty. Gen., Thomas S. Mullin, County Atty., and Mark Campbell, Asst. County Atty., for appellee.

Heard by DONIELSON, C.J., and SACKETT and HABHAB, JJ.

DONIELSON, Chief Judge.

On June 11, 1989, Beverly Davis stabbed John Jasa in the chest. Jasa was taken to the emergency room and treated by Dr. Theodore Roman, who determined Jasa had suffered a stab wound to the heart. Jasa's heart was repaired, but Jasa suffered brain damage from lack of oxygen, leaving him in a persistent vegetative state. On July 1, 1989, a feeding tube was placed into Jasa's stomach. The opening for the tube was just slightly larger than the tube, allowing fluid to leak into the abdominal cavity resulting in bacterial peritonitis. Jasa died on July 2, 1989.

Davis was charged with first-degree murder. Kay E. Dull and Jeffrey T. Myers were appointed to represent Davis. At trial Davis's theory of defense was the proximate cause of death was not the stabbing, but rather the improper or negligent placement of the feeding tube. Davis sought, but did not receive, a jury instruction concerning intervening causation. Davis was convicted of second-degree murder.

On appeal, Davis argued that the trial court erred in failing to instruct on intervening and superseding causation. The conviction was affirmed by operation of law and Davis's application for further review was denied.

Davis filed an application for postconviction relief alleging trial counsel was ineffective in failing to call an expert witness to testify concerning medical negligence on the part of the doctor who placed the feeding tube in Jasa's stomach and in failing to make a sufficient request for an intervening cause instruction. The State's motion for summary judgment was granted. Davis asked to have the application reinstated and for adequate time to find a medical expert to refute the State's trial witnesses. Her motion was granted and Davis was allowed to hire an expert.

The State renewed its motion for summary judgment. Davis submitted the report of her expert, Roger Geiss who stated:

> ... both the peritonitis and the broncho-pneumonia were significant events in causing [Jasa's] demise.... However, since both were medical complications ultimately eventuating from the stab wound to the chest, the fact remains ... the underlying cause of [Jasa's] death was the stab wound to the chest.

The district court granted the State's motion for summary judgment. It found trial counsel's failure to employ an expert independent of the State's was a breach of duty. However, since Davis's own expert concurred in the cause of death, she had failed to establish prejudice.

Davis now appeals. She argues Geiss's report did not address intervening causation and a sufficient question remains to warrant a hearing on the merits. She also contends there remains a question concerning the adequacy of trial counsel's jury instruction objections. Davis contends her trial counsel's decision to abandon intervening causation as a defense was not a reasonable tactical decision.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." Iowa R.Civ.P. 237(c); *see Farm Bureau Mut. Ins. Co. v. Milne,* 424 N.W.2d 422, 423 (Iowa 1988). The moving party has the burden to show the nonexistence of a material fact, *Milne,* 424 N.W.2d at 423, and the evidence must be viewed in the light most favorable to the resisting party, *Thorp Credit, Inc. v. Gott,* 387 N.W.2d 342, 343 (Iowa 1986). The procedure is functionally akin to a directed verdict, and every legitimate inference that reasonably can be deduced from the evidence should be afforded the resisting party. *Id.; Sherwood v. Nissen,* 179 N.W.2d 336, 339 (Iowa 1970). A fact issue is generated if reasonable minds can differ on how the issue should be resolved, but if the conflict in the record consists only of the legal consequences flowing from undisputed facts, entry of summary judgment is proper. *Milne,* 424 N.W.2d at 423; *Gott,* 387 N.W.2d at 343. If the motion is properly supported, however, the resisting party "must set forth specific facts showing that there is a genuine issue for trial." Iowa R.Civ.P. 237(e).

Ordinarily, our review of postconviction relief proceedings is for errors of law. *Hinkle v. State,* 290 N.W.2d 28, 30 (Iowa 1980). However, when a postconviction petitioner asserts violation of constitutional safeguards—such as ineffective assistance of counsel—we make our own evaluation based on the totality of the circumstances. This is the equivalent of de novo review. *Id.*

In order to prevail on such a claim, appellant must show by a preponderance of the evidence (1) counsel failed to perform an essential duty and (2) prejudice resulted. *See State v. Risdal,* 404 N.W.2d 130, 131 (Iowa 1987); *Edman v. State,* 444 N.W.2d 99, 101 (Iowa App.1989). In evaluating counsel's performance, we presume counsel acted competently. *See Risdal,* 404 N.W.2d at 131.

In proving the first prong of this test, appellant must overcome the strong presumption counsel's actions were reasonable under the circumstances and fell within the normal range of professional competency. *State v. Hildebrant,* 405 N.W.2d 839, 841 (Iowa 1987). To prove the second prong of this test appellant must show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland v. Washington,* 466 U.S. 668, 694, 104 S.Ct. 2052, 2068, 80 L.Ed.2d 674, 698 (1984). With these principles in mind we now turn to appellant's specific claims.

Davis first argues her attorney did not make a sufficient request for an intervening cause instruction to the jury. We disagree. The supreme court's decision in *Murray v. State,* 512 N.W.2d 547 (1994) cogently discusses this issue:

> We have recognized that principles of causation normally associated with civil tort litigation have a proper application in criminal cases. *See State v. McFadden,* 320 N.W.2d 608, 612–13 (Iowa 1982); *State v. Marti,* 290 N.W.2d 570, 585–86 (Iowa 1980). Under accepted principles of civil tort law, rules that restrict an actor's responsibility under theories of superseding cause are for the court to apply rather than the jury. Restatement (Second) of Torts § 453 (1965). The governing principle in deciding whether the medical decisions in the present case could be a superseding cause is covered by another section of the Restatement. That section provides:

> > The intervention of a force which is a *normal consequence* of a situation created by the actor's negligent conduct is not a superseding cause of harm which such conduct has been a substantial factor in bringing about.

> Restatement (Second) of Torts § 443 (1965) (emphasis added). The interpretive comment to the above section with respect to what is a "normal" consequence states that:

> > The word "normal" is not used in this Section in the sense of what is usual, customary, foreseeable, or to be expect-

ed. It denotes rather the antithesis of abnormal, of extraordinary. It means that the court or jury, looking at the matter after the event, and therefore knowing the situation which existed when the new force intervened, does not regard its intervention as so extraordinary as to fall outside of the class of normal events.

*Id.* cmt. b. Judged by this standard, we conclude that the medical decisions ... were as a matter of law normal consequences of the situation created by [defendant's] criminal conduct. There was no basis for instructing the jury with respect to a superseding cause.

*Murray*, 512 N.W.2d at 550–51 (emphasis in original). The district court used Iowa Criminal Jury Instruction 700.11 for causation. The instruction stated:

Concerning element No. 2 of Instruction No. 14 and Instruction No. 24 [which reads "John Jasa died as a result of being stabbed"], the wound inflicted by the defendant resulted in the death of John Jasa, if it caused or directly contributed to John Jasa's death.

Since the placement of the feeding tube was a normal consequence of the medical condition caused by the stab wound, a jury instruction regarding superseding cause would have been erroneous. Consequently, trial counsel did not provide ineffective assistance in failing to have such an instruction submitted to the jury.

■ Davis next argues her attorney was ineffective because an independent expert was not called to testify concerning the cause of Jasa's death. We agree such a decision at trial might be the basis for a claim of ineffective assistance of counsel in some situations, but not in this case. The court granted the application by Davis to employ an expert. The expert's written opinion agrees with the opinion of the State's experts. All three doctors agree the stabbing began a chain of events leading to Jasa's death. Therefore, even though counsel should have retained an independent expert at trial, this error was corrected at the postconviction level. Since the opinions of the experts agree, Davis can-

not show prejudice. Therefore she cannot prove ineffective assistance of counsel.

Davis argues the standard of causation used by her expert was incorrect. We disagree. The supreme court's decision in *Murray* sets forth the proper standard for determining causation:

... the theory upon which defendant relies is not legally sound. As we stated in *State v. Inger*, 292 N.W.2d 119 (Iowa 1980), "[i]t is well established that ordinarily negligent treatment or neglect of an injury will not excuse a wrong done unless the treatment or neglect was the sole cause of death." *Id.* at 125.

In the present case, *the medical decisions that preceded the victim's death were the product of the physical condition in which the victim had been placed as a result of her assailant's blows. Consequently, those medical decisions were part of a chain of events set in motion by the assailant's act and leading directly to the victim's death.... That is sufficient to render the attack a legal cause of her death.*

The recent decision of a federal court contains a helpful discussion of the principles to be applied in deciding legal causation issues in homicide situations similar to the one now before the court. In that case, the federal court of appeals stated that:

[A]n act is a cause of an event if two conditions are satisfied: the event would not have occurred without the act; the act made the event more likely. The first condition is necessary to distinguish the attempted from the completed crime, the second to rule out cases in which, while the event in question would not have occurred but for the act, the act did not create the kind of dangerous condition that would make such events more likely to occur.

*Brackett v. Peters*, 11 F.3d 78, 79 (7th Cir.1993). In applying these principles to the case before it, the federal court found in a homicide prosecution that an assault on an eighty-five-year-old woman was a legal cause of her death, which occurred when food administered through a feeding

syringe lodged in her trachea. Use of the feeding syringe was made necessary by the injuries that she sustained in the assault.

*Murray,* 512 N.W.2d at 550 (Emphasis added). This case presents a similar situation. The use of a feeding tube was necessitated by the vegetative condition resulting from lack of oxygen to the brain caused by the stab wound to the heart. Therefore the stab wound was the legal cause of Jasa's death. The doctor employed by Davis did not use an improper standard of causation.

Since Davis cannot pass the two-part test to prove ineffective assistance of counsel, there remains no genuine issue of material fact. Therefore summary judgment was appropriate. The district court correctly granted summary judgment in this postconviction relief proceeding.

For the reasons stated, we affirm the decision of the district court granting summary judgment. We determine any other issues the parties may have raised are either covered by this opinion or are without merit.

**AFFIRMED.**

HABHAB, J., concurs.

SACKETT, J., specially concurs.

SACKETT, Judge (concurring).

I concur in the majority's decision to affirm because I find Davis has failed to show prejudice.