**Beth Irene BUTTS, Plaintiff–Appellant,**

v.

**UNIVERSITY OF OSTEOPATHIC MEDICINE & HEALTH SCIENCES and Steve Dengle, Defendants–Appellees.**

No. 95–1710.

Court of Appeals of Iowa.

Feb. 26, 1997.

James E. Brick and Douglas Staskal (until withdrawal) of Brick, Gentry, Bowers, Swartz, Stoltze, Schuling & Levis, P.C., Des Moines, for plaintiff–appellant.

Mark McCormick of Belin Harris Lamson McCormick, P.C., Des Moines, for defendants–appellees.

Heard by CADY, P.J., and HUITINK and STREIT, JJ., but decided en banc.

HUITINK, Judge.

Beth Irene Butts appeals from an adverse ruling on the University of Osteopathic Medicine and Health Science's (University) motion for summary judgment resulting in dismissal of her wrongful discharge and intentional infliction of emotional distress claims. We affirm.

## I. Background Facts and Proceedings.

The summary judgment record includes the following undisputed facts. Butts was hired by the University as an assistant director of purchasing in 1989. She was promoted to director of purchasing in 1990. As director of purchasing, Butts reported directly to Dr. Leonard Azneer, the president of the University.

In 1992, Steven Dengle, Azneer's executive assistant, recommended reorganization of the University's purchasing and data processing departments. He suggested that Carole Findlay be named assistant director of purchasing and that the purchasing department report directly to him. Dengle's memo to Azneer including these recommendations also indicated the University would be in a better position if it became necessary to "affect a change in Ms. Butts' employment status." Azneer did not respond to the memorandum.

In July 1992, Dr. Keith Blayney was named chancellor of the University. At his request, Butts provided Blayney with information concerning Azneer's purchasing re-

quests for personal items, including the purchase of kosher meats, or purchases not made through the normal channels at the University. In September 1992, Blayney criticized Azneer's administration including his improper purchasing practices before the University's Board of Trustees. Two days later Butts was called to Azneer's office and chastised by Azneer in Dengle's presence for portraying Azneer unfavorably in her report to Blayney. He directed Butts to report to Dengle in the future. Azneer was eventually placed on administrative leave and did not return to the University.

The Des Moines law firm of Belin Harris Lamson & McCormick was retained by the University to investigate the allegations made in Blayney's report. In October 1992, a letter was sent to all University employees requesting cooperation with the investigators and promising no adverse employment consequences would result from their cooperation. Butts met with the investigators and shared her earlier described experiences with Azneer's purchasing practices.

In March 1993, Dengle recommended another reorganization of the departments under his supervision. As part of this reorganization, he recommended the creation of a new position, director of materials management, requiring a master's degree. Carole Findlay obtained a master's degree in May 1993. Butts did not hold a master's degree. Both interviewed for the position. Findlay was offered the job and became Butts' supervisor.

The working relationship between Findlay and Butts was strained. In a May 1993 memorandum, Findlay recommended Butts' termination. Butts' responsibilities within the department were reduced. In September 1993, the University eliminated Butts' position and she was terminated. After firing Butts, the University hired another person to perform Butts' former duties.

Butts sued the University for damages citing several theories of recovery. She alleged the University breached the contract resulting from its promise not to retaliate against employees who cooperated with the investigation of allegations made in Blayney's report to the trustees. Butts also alleged

she was terminated in retaliation for objecting to employees' personal purchases from University vendors to avoid payment of otherwise applicable sales taxes. In count IV of her petition, Butts alleged the University officials' retaliatory actions against her were outrageous and, as a result, she suffered compensable emotional distress.

In its ruling on the University's motion for summary judgment, the district court noted Butts' failure to generate a fact question on the relationship between the University's alleged misconduct and termination of her employment. This deficiency proved fatal to Butts' claims for breach of contract and retaliatory discharge. The district court also determined that Butts' claim for intentional infliction of emotional distress failed because the University's conduct was not outrageous as a matter of law.

On appeal Butts contends the summary judgment record presents genuine issues of material fact on each of her claims. She cites her strained relationship with Azneer and Dengle following her disclosure and objection to Azneer's purchasing practices. Butts also cites the same circumstances as evidence of a nexus between her conversations with investigators and the University's decision to terminate her. Lastly, she claims it was error for the district court to conclude, as a matter of law, that the University's termination decision was not outrageous conduct.

## II. Standard of Review.

Summary judgment is reviewed for errors of law. Iowa R.App. P. 4. Summary judgment is appropriate only if there exists no genuine issue of material fact. *Farm Bureau Mut. Ins. Co. v. Milne*, 424 N.W.2d 422, 423 (Iowa 1988). The moving party has the burden to show the nonexistence of a material fact. *Id.* The evidence must be viewed in the light most favorable to the nonmoving party. *Thorp Credit, Inc. v. Gott*, 387 N.W.2d 342, 343 (Iowa 1986). This procedure is functionally akin to a directed verdict, and every legitimate inference that reasonably can be deduced from the evidence should be afforded the nonmoving party. *Id.*

A fact issue is generated if reasonable minds can differ on how the issue should be resolved. *Id.* If the conflict in the record consists only of legal consequences flowing from undisputed facts, entry of summary judgment is proper. *Milne,* 424 N.W.2d at 423.

> When a motion for summary judgment is made and supported as provided in [Iowa R. Civ. P. 237], an adverse party may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

Iowa R. Civ. P. 237(e). With these principles in mind, we turn to Butts' contentions.

### III. Wrongful Discharge.

■ In Iowa, employees are presumed to be employees "at will." *Anderson v. Douglas & Lomason Co.,* 540 N.W.2d 277, 281 (Iowa 1995). An employer may discharge an at will employee at any time, for any reason or no reason at all. *Id.* The exceptions to this rule recognized by Iowa courts include (1) discharge in violation of a "well recognized and defined public policy of the state," and (2) where a unilateral contract is created by an employee's handbook or policy manual. *Springer v. Weeks & Leo Co.,* 429 N.W.2d 558, 560 (Iowa 1988). The parties concede and we find Butts was an employee at will.

■ **A. Discharge in Violation of Public Policy.** Recovery under this theory requires proof Butts engaged in conduct protected by a recognized public policy. Butts must also prove her protected conduct was a determining factor in the University's decision to fire her. *See Smith v. Smithway Motor Xpress, Inc.,* 464 N.W.2d 682, 686 (Iowa 1990). Proof that adverse employment action occurs after protected employee conduct, without more, is insufficient to generate a fact question on the determining factor issue. *Dudley Phipps v. IASD Health Servs. Corp. d/b/a Blue Cross Blue Shield of Iowa,* 558 N.W.2d 198, 203 (Iowa 1997) (citing *Hulme v. Barrett,* 480 N.W.2d 40, 43 (Iowa 1992)).

The district court must decide as a matter of law whether a particular employee act is protected by public policy. The district court declined to make this determination citing other issues that were case dispositive. Although we do not premise any finding of error on this omission, we think it is important to note a flaw in the district court's reference to the source of the public policy implicated in this case. In its summary judgment ruling, the district court stated the issue as "whether section 422.58 represents a clear and substantial public policy." Our concern is that this characterization of the issue confines the origins of protected employee conduct to the policy expressed in the statute. We have recognized an employee's cause of action if the discharge is "in retaliation for performing an important and socially desirable act, exercising a statutory right or refusing to commit an unlawful act." *Borschel v. City of Perry,* 512 N.W.2d 565, 567 (Iowa 1994) (citations omitted). These distinctions have been more clearly expressed as three categories of protected employee conduct: (1) exercising a statutory right or civil obligation; (2) refusing to engage in illegal activities; or (3) reporting criminal conduct to supervisors or outside agencies. *See* Werner, *The Common Law Employment at Will Doctrine: Current Exceptions for Iowa Employees,* 43 Drake L.Rev. 290, 314 (1994).

■ The gist of Butts' claim is that the University fired her for refusing to facilitate sales tax violations by including Azneer's personal purchases in otherwise sales tax exempt purchases from University vendors.[1]

---

1. Iowa Code section 422.58(3) (1995) provides:

   A person who willfully attempts to evade a tax imposed by this division or the payment of the tax or a person who makes or causes to be made a false or fraudulent semimonthly or monthly tax deposit form or return with intent to evade the tax imposed by this division or the payment of the tax is guilty of a class "D" felony.

   Iowa Code section 422.58(5) (1995) provides:

   A person required to pay a tax, or to make, sign, or file a semimonthly or monthly tax deposit form or return or supplemental return, who willfully makes a false or fraudulent semimonthly or monthly tax deposit form or return,

We have recognized an implied cause of action for wrongful termination of an employee for refusing to commit an illegal act in the course of employment. *Smuck v. National Mgmt. Corp.*, 540 N.W.2d 669, 674 (Iowa 1995); *Borschel v. City of Perry*, 512 N.W.2d 565, 567 (Iowa 1994); *Wilcox v. Hy–Vee Stores, Inc.*, 458 N.W.2d 870, 872 (Iowa App. 1990). We hold it is against the public policy of this state to discharge an employee for refusing to participate in state sales tax violations or for reporting such violations to a supervisor or appropriate civil authority.

■ Despite this determination, we conclude Butts has not met her burden to produce specific facts supporting her claim that her refusal to violate state sales tax laws was the determining or predominate factor in the University's discharge decision. The record indicates that her confrontation with Azneer on this issue occurred more than one year prior to her termination. The record also indicates she was fired *after* Azneer left the University by officials who were not implicated in the allegedly illegal purchasing practices. Butts has failed to show anything more than arguably protected employee activity followed by adverse employment action. We accordingly affirm on this issue.

■ **B. Breach of Contract.** As earlier noted, there is no dispute the University was contractually barred from retaliating against Butts for cooperating with the investigation of Blayney's allegations. To prevail under this theory, Butts must prove the University breached its contractual obligation not to retaliate. *See Iowa–Illinois Gas & Electric Co. v. Black & Veatch*, 497 N.W.2d 821, 825 (1993).

Butts concedes she cannot show her termination resulted from her cooperation with the investigation. However, she claims the scope of the unilateral contract includes any information she shared with Blayney prior to her cooperation with investigators. Even if we were to accept this interpretation of the contract, Butts' contention fails for the same reason as her public policy claim. There is simply nothing in the record connecting her disclosures to Blayney and her subsequent discharge. Because Butts has failed to produce specific facts connecting these events, we conclude the district court correctly entered summary judgment on her breach of contract claim.

### IV. Intentional Infliction of Emotional Distress.

To prevail on this issue, Butts must prove the University engaged in outrageous conduct. *Cutler v. Klass, Whicher & Mishne*, 473 N.W.2d 178, 183 (Iowa 1991) (citations omitted). The court must determine, as a matter of law, that the conduct engaged in is outrageous. *M.H. by and through Callahan v. State*, 385 N.W.2d 533, 540 (Iowa 1986) (citations omitted).

■ Outrageous conduct must be "so extreme in degree as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized community." *Vaughn v. Ag Processing Inc.*, 459 N.W.2d 627, 636 (Iowa 1990) (citations omitted). The record demonstrates nothing more than Butts' termination from at will employment. There is no evidence showing the University's decision to fire her was outrageous as the term is defined.

The district court's decision is affirmed in its entirety.

**AFFIRMED.**

STREIT, J., takes no part.

or willfully fails to pay at least ninety percent of the tax or willfully fails to make, sign, or file the semimonthly or monthly tax deposit form

or return, at the time required by law, is guilty of a fraudulent practice.