413 S.E.2d 404

**BUCKHANNON–UPSHUR COUNTY AIRPORT AUTHORITY, Plaintiff Below, Appellee,**

v.

**R & R COAL CONTRACTING, INC., a West Virginia corporation, a/k/a R & R Contracting, Inc., a corporation; W.A. Ryder Contracting Company, Inc., a corporation; Willie A. Ryder; Allied Fidelity Insurance Company, a corporation; L. Robert Kimball and Associates, a Pennsylvania sole proprietorship; Continental Casualty Company, a corporation; Buckeye Union Insurance Company, a corporation; Boston Old Colony Insurance Company, a corporation; Firemen's Insurance Company of Newark, New Jersey, a corporation; and Continental Insurance Company, a corporation, Defendants Below, Appellants.**

No. 20211.

Supreme Court of Appeals of West Virginia.

Submitted Oct. 1, 1991.

Decided Dec. 17, 1991.

James A. Varner, Catherine D. Munster, McNeer, Highland & McMunn, Clarksburg, for Buckhannon–Upshur Airport Authority.

Michael L. Solomon, Busch, Jory, Smith & Talbott, Morgantown, for Buckeye Union Ins. Co., Boston Old Colony Ins. Co., Firemen's Ins. Co., Newark, N.J., and Continental Ins. Co.

W. Arch Irvin, Jr., Wayman, Irvin & McAuley, Pittsburgh, Pa., for L. Robert Kimball and Associates.

Stephen D. Annand, Shuman, Annand & Poe, Charleston, for Continental Cas. Co.

WORKMAN, Justice:

This case is before the Court upon a January 28, 1991, order of the Circuit Court of Upshur County which certified six questions to this Court.[1] The lower court

---

**1.** The original certified questions were as follows:

I. Whether, as a matter of West Virginia law and public policy, a liability insurance carrier is liable, on behalf of its insured, to a West Virginia third-party claimant for prejudgment and/or presettlement interest in addition to [or in excess of] those proceeds of insurance which are subject to the policy's limits of liability provisions.

II. Whether, as a matter of West Virginia law and public policy, a liability insurance carrier is liable, on behalf of its insured, to a West Virginia third-party claimant for prejudgment and/or presettlement interest, in addition to [or in excess of] those proceeds of insurance which are subject to the policy's limits of liability provisions, by virtue of the doctrine of equitable interest.

III. Whether, as a matter of West Virginia law and public policy, a liability insurance carrier is liable for prejudgment and/or presettlement interest, in addition to [or in excess of] those proceeds of insurance which are subject to the policy's limits of liability provisions, pursuant to the terms of the insurance policy itself where:

1. The supplementary payments provision requires the insurer to pay, as an additional item of coverage, all expenses insured by the carrier and all costs taxed against the insured in any suit defended by the carrier; and,

2. The limits of liability provision applies only to 'all sums' the insured is obligated to pay as 'damages.'

IV. Whether, as a matter of West Virginia law and public policy, a liability insurance carrier is liable for prejudgment and/or presettlement interest, in addition to those proceeds of insurance which are subject to the policy's limits of liability provisions, pursuant to the terms of the insurance policy itself where:

1. The policy provides, under its 'Limits of Liability' section as follows:

A. All Claims

The limit of liability shown on the Declarations is the maximum we will pay for any one or more 'claim' made during this policy term....

B. Claims Expenses

'Claims expenses' are subject to and included within the applicable limit of liability....;

2. Continental Casualty Company has offered a total of its contended limit of liability less all claims expenses as settlement to two claimants for three claims in two lawsuits; and

3. The definitions of 'claim' and 'claims expenses', when read together, specifically list items subject to the limits of liability and neither the list nor the policy mention [sic] interest payments.

answered each of the certified questions in the affirmative. We decline to address the certified questions as formulated since they are largely redundant.[2] The question which must be addressed is whether a liability insurer is liable, on behalf of its insured, to a third-party claimant for prejudgment and/or presettlement interest, in excess of those proceeds of insurance which are subject to the limits of liability provisions found within the insurance policy.[3] Upon review of the arguments of the parties and all the matters of record submitted before the Court, we disagree with the lower court's answer to this question.

This action involves one of two pending lawsuits[4] arising out of the construction of the Buckhannon–Upshur County Airport. On August 4, 1988, the Buckhannon–Upshur County Airport Authority (hereinafter referred to as BUAA) filed its original complaint against L. Robert Kimball & Associates (hereinafter referred to as Kimball), the insured of Continental Casualty Company (hereinafter referred to as Continental Casualty), and R & R Coal Contracting, Inc., a/k/a R & R Contracting, Inc., W.A. Ryder Contracting Company, Inc. and Willie A. Ryder (hereinafter referred to collectively as R & R), the insureds of the R & R insurers. These four defendants had performed work on the Buckhannon–Upshur County Airport construction project. On

about October 23, 1989, Continental Casualty requested Kimball's consent to settle both of the pending lawsuits, as required by the insurance policy.[5] Kimball did not give the necessary consent to settle until March 2, 1990, and Continental Casualty did not receive written notice of Kimball's consent until March 8, 1990.

On April 6, 1990, Continental Casualty offered to pay its remaining policy limit of $1.9 million in full and final settlement of the claims made against Kimball in this action and the *Ryan* suit. BUAA rejected this offer on April 16, 1990.

Trial on this matter was scheduled to begin on October 29, 1990, when the parties agreed to postpone it to pursue settlement negotiations. As a result of these negotiations, BUAA demanded that Continental Casualty settle the claims against Kimball in both lawsuits by paying the remaining policy limit of $1.9 million plus $1.3 million in prejudgment or presettlement interest in excess of the policy limits.

Continental Casualty rejected BUAA's demand for the amount in excess of the stated policy limit and subsequently filed a declaratory judgment action against Kimball in the United States District Court for the Western District of Pennsylvania to

V. Whether, prior to judgment, an injured third-party plaintiff has standing to sue a defendant's insurer for declaratory relief when the injured third-party has made a demand for prejudgment and/or presettlement interest, in addition to those proceeds of insurance which are subject to the policy's limits of liability provisions, as an aspect of insurance coverage which the insurer has refused to pay, and when the insurer has offered a total of its contended limits of liability less all 'claims expenses' as settlement to two claimants for three claims in two lawsuits.

VI. Whether, in this case, West Virginia law controls the issue of an insurance carrier, Continental Casualty Company's obligation for prejudgment and/or presettlement interest in addition to [or in excess of] its stated policy limits.

2. Upon receiving certified questions, we retain some flexibility in how the questions will be addressed. *See City of Fairmont v. Retail,*

*Wholesale, and Dept. Store Union, AFL–CIO,* 166 W.Va. 1, 3–4, 283 S.E.2d 589, 590–91 (1980).

3. In addressing this question, we summarily conclude that the Buckhannon–Upshur Airport Authority had standing to bring the declaratory action by means of the amended complaint and further conclude that West Virginia law applies to this action. *See Christian v. Sizemore,* 181 W.Va. 628, 383 S.E.2d 810 (1989) and *Liberty Mut. Ins. Co. v. Triangle Indus., Inc.,* 182 W.Va. 580, 390 S.E.2d 562 (1990). Accordingly, we agree with the lower court's answers to certified questions Nos. 5 and 6.

4. The other lawsuit was filed in the United States District Court for the Northern District of West Virginia. *See Ryan, Inc. of Wisconsin v. Buckhannon–Upshur County Airport Authority, et al.,* Civil Action No. 86–208–E (filed December 31, 1986) (hereinafter referred to as *Ryan* ).

5. The policy, in pertinent part, provides that Continental Casualty "will not settle any 'claim' without [the insured's] informed consent."

determine its liability under the policy.[6] Likewise, on October 26, 1990, BUAA also sought declaratory judgment relief by filing an amended complaint against Continental Casualty and four other insurers to determine the identical issue of the amount of coverage available to the original defendants under their respective insurance policies.

The principal issue before this Court for determination is whether an insurer may be required to pay prejudgment interest that is awarded against its insured in excess of policy limits regardless of the liability limits under the insurance policy and regardless of the conduct of the insurer. The appellant asserts that the trial court erred in ruling that the insurer is liable for prejudgment interest because 1) the plain language of the insurance policy precludes such liability in excess of policy limits; 2) the public policy of this state in favor of prompt settlement of claims is already supported by existing state law;[7] and 3) the prejudgment interest statute found in West Virginia Code § 56–6–31 (1981) and the "doctrine of equitable interest" are not applicable to the facts of this case. The appellee, on the other hand, maintains that the insurance companies should be liable to third-party claimants for prejudgment interest in excess of policy limits as a matter of sound public policy. Moreover, the terms of the insurance policies in the present case are ambiguous as to the obligation of the insurers to pay prejudgment interest in addition to those policy proceeds which are the subject of the limits of liability provisions and therefore, the terms must be strictly construed against insurers.

6. Continental Casualty did not name BUAA in the declaratory judgment action filed in Pennsylvania. Further, Continental Casualty has opposed efforts made by Kimball to join BUAA in that action.

7. *See* Unfair Claim Settlement Practices Act, W.Va.Code § 33–11–1 to –10, as amended. An insurer is also subject to liability based upon a breach of the duty of good faith and fair dealing for unreasonable delay in the payment of a claim.

8. The appellee misguidedly relies upon *Snider v. State Farm Mut. Auto. Ins. Co.,* 360 F.Supp. 929

## PREJUDGMENT INTEREST STATUTE

■ First, the appellant contends that prejudgment interest is an element of compensatory damages under West Virginia Code § 56–6–31 and therefore, is afforded the same coverage as other types of damages under the insurance policy. The appellee asserts that with the enactment of West Virginia Code § 56–6–31, the legislature eradicated "the common law fiction" that interest is a form of damages depending on whether it is calculated before or after the judgment was entered, asserting rather that prejudgment interest is a cost which under the provisions of the insurance policy, the insurer must pay.[8]

This Court has indicated that the purpose of a rule allowing prejudgment interest *as part of damages* for ascertainable pecuniary loss is "to fully compensate the injured party for the loss of the use of funds that have been expended." *Bond v. City of Huntington,* 166 W.Va. 581, 598, 276 S.E.2d 539, 548 (1981), *superseded by statute as stated in Rice v. Ryder,* 184 W.Va. 255, 400 S.E.2d 263 (1990) (emphasis added).[9]

Then in 1981, the West Virginia Legislature amended West Virginia Code § 56–6–31 to provide, in pertinent part, that:

Except where it is otherwise provided by law, every judgment or decree for the payment of money entered by any court of this State shall bear interest from the date thereof, whether it be so stated in the judgment or decree or not: Provided, that if the judgment or decree, or any part thereof, is for special damages, as defined below, or for liquidated damages,

(S.D.W.Va.1973) to support the proposition that prejudgment interest is a cost rather than a damage. It is clear that the *Snider* case deals solely with postjudgment interest where a $30,-000.00 judgment had become final, but the insurer had not satisfied it. 360 F.Supp. at 930.

9. The *Bond* decision occurred under W.Va.Code § 56–6–31 (1931) which simply provided that "[e]very judgment or decree for the payment of money, except where it is otherwise provided by law, shall bear interest from the date thereof, whether it be so stated in the judgment or decree or not."

the amount of such special or liquidated damages shall bear interest from the date the right to bring same shall have accrued, as determined by the court. Special damages includes lost wages and income, medical expenses, damages to tangible personal property, and similar out-of-pocket expenditures, as determined by the court.

Subsequent to the enactment of this statutory provision, this Court continued to indicate that prejudgment interest was a form of compensatory damages. *See Beard v. Lim*, 185 W.Va. 749, 408 S.E.2d 772 (1991); *Grove ex rel. Grove v. Myers*, 181 W.Va. 342, 346, 382 S.E.2d 536, 540 n. 4 (1989). Even the statute provides for prejudgment interest on special damages which includes compensatory damages. *See* W.Va.Code § 56–6–31. Hence, prejudgment interest, according to W.Va.Code § 56–6–31 and the decisions of this Court interpreting that statute, is not a cost, but is a form of compensatory damages intended to make an injured plaintiff whole as far as loss of use of funds is concerned.

■ Consequently, the only way the appellee is entitled to prejudgment interest in excess of the policy limits is if such coverage is provided for in the insurance policy or if our public policy mandates such protection for the insured. It is clear, however, that the prejudgment interest statute does not require an insurer to pay prejudgment interest in any amount in excess of the policy limits contracted upon between the insurer and the insured, absent some provision in the policy to the contrary.

### POLICY LANGUAGE

■ The appellants maintain that the insurance policies involved are not ambiguous and plainly preclude liability for prejudgment interest in excess of the policy limits. The appellee contradicts the appellants' argument by stating that the terms of the insurance policies involved are ambiguous and create a reasonable expectation that the insurer will pay the interest in excess of policy limits.

First, it is helpful to examine the language of the insurance policies involved.

The Continental Casualty policy provides in pertinent part that:

6.  LIMIT OF LIABILITY:

$2,000,000 is the maximum we will pay for *all claims and claim expenses* during this policy term.

. . . .

I.  COVERAGE AGREEMENTS

   A.  We will pay *all amounts* in excess of the deductible *up to our limit of liability,* which 'you' become legally obligated to pay as a result of a 'wrongful act' occurring anywhere in the world.

   . . . .

   D.  We will not be obligated to defend any suit or pay any 'claim' or 'claim expenses' after the applicable limit of our liability has been exhausted by payment of 'claim' or 'claim expenses.'

   . . . .

III. LIMITS OF LIABILITY

   A.  All Claims

   The limit of liability shown on the Declarations is the maximum we will pay for any one or more 'claim' made during this policy term. This limit applies as excess over any deductible amount.

   . . . .

   B.  Claims Expenses

   'Claims expenses' are subject to and included within the applicable limit of liability.

   . . . .

   'Claim' means the receipt of a demand for money or services, naming 'you' and alleging a 'wrongful act.'

   'Claim expenses' means:

   A.  fees charged by an attorney we designate, and

   B.  all other fees, costs, and expenses resulting from the investigation, adjustment, defense, and appeal of a 'claim' if incurred by:

   1.  us;

   2.  any attorney designated by us; or

   3.  by 'you' with our written consent.

....

"Claims expenses" does not include salaries of [Continental Casualty] employees or officials, or fees and expenses of independent adjusters.

(emphasis added).

The R & R policy provided in pertinent part that the limit of the company's liability was $300,000.00 for each occurrence and that:

The company will pay on behalf of the insured, all sums which the insured shall become legally obligated to pay as damages because of

A. bodily injury or

B. property damage to which this insurance applies, caused by an occurrence ... but the company shall not be obligated to pay any claim or judgement ... after the applicable limit of the company's liability has been exhausted by payment of judgements or settlements.

....

The company will pay, in addition to the applicable limit of liability:

(a) All expenses incurred by the company, all costs taxed against the injured in any suit defended by the company and all interest on the entire amount of any judgement therein which accrues after entry of judgement and before the company has paid or tendered or deposited in court that part of the judgement which does not exceed the limit of the company's liability therein....

█ This Court has previously held that "[w]here the provisions of an insurance policy contract are clear and unambiguous they are not subject to judicial construction or interpretation, but full effect will be given to the plain meaning intended." Syllabus, *Keffer v. Prudential Ins. Co.*, 153 W.Va. 813, 172 S.E.2d 714 (1970);

accord Syl.Pt. 1, *Christopher v. United States Life Ins.*, 145 W.Va. 707, 116 S.E.2d 864 (1960). Further, in syllabus point 1 of *Soliva v. Shand, Morahan & Co.*, 176 W.Va. 430, 345 S.E.2d 33 (1986), we stated that the "[l]anguage in an insurance policy should be given its plain, ordinary meaning."

Upon a review of the above-mentioned language relevant to the insurance policies in this matter, we find that both policies clearly and unambiguously state not only the policy limits applicable, but also that prejudgment interest in excess of the policy limits was not a contractual obligation taken on by the insurer to pay in behalf of the insured. The only possible way that the insurer would be responsible for the prejudgment interest in excess of the policy limits would have been if we had concluded that such interest was a cost. Since this was not the conclusion reached by the Court, we find that the appellee's argument regarding language in the policies is without merit.[10]

## PUBLIC POLICY

█ The appellants finally argue that the policy provision limiting liability does not violate any West Virginia public policy or statute. The appellants assert that: 1) the policy does not violate any existing West Virginia public policy; 2) the public policy identified by BUAA, which is the policy in favor of prompt settlement of claims, is better served by enforcement of the policy's limit of liability; 3) the public policy argument advanced by the appellee already receives adequate support through the state's "bad faith" law; and, 4) the appellee's public policy argument has been overwhelmingly rejected by other jurisdictions. The appellee maintains that the requirement that a liability insurer pay prejudgment interest in excess of the policy

10. Since this Court has concluded that the language of the insurance policies is unambiguous, we can summarily dismiss the appellee's contention that the doctrine of reasonable expectation should be the basis for holding the insurer liable for the prejudgment interest in excess of policy limits. In *National Mut. Ins. Co. v. McMahon & Sons, Inc.*, 177 W.Va. 734, 356 S.E.2d 488 (1987), this Court addressed the doctrine of reasonable expectation as it relates to insurance policies. There, we held that "[i]n West Virginia, the doctrine of reasonable expectations is limited to those instances ... in which the policy language is ambiguous." 177 W.Va. at 742, 356 S.E.2d at 496.

limits furthers the public policy in favor of prompt settlement.

There is strong public policy in this state which supports and encourages the settlements of controversies between parties. *See* Syl.Pt. 1, *Sanders v. Roselawn Memorial Gardens, Inc.,* 152 W.Va. 91, 159 S.E.2d 784 (1968). Both the Legislature and this Court have taken measures to ensure that insurers make every effort to effect settlements with insureds or third-party claimants. *See* W.Va.Code § 33–11–1 to –10; (delay in settling a claim may result in an unfair claims settlement practices action against insurer); *Shamblin v. Nationwide Mut. Ins. Co.,* 183 W.Va. 585, 396 S.E.2d 766 (1990). In *Shamblin,* we held that

> [w]herever there is a failure on the part of an insurer to settle within policy limits where there exists the opportunity to settle and where such settlement within policy limits would release the insured from any and all personal liability, the insurer has prima facie failed to act in its insured's best interest and such failure to so settle prima facie constitutes bad faith toward its insured.

183 W.Va. at 595, 396 S.E.2d at 776 and Syl.Pt. 2. Such a failure to settle may result not only in the award of punitive damages against the insurer, but the insurer may be liable to its insured for any personal liability in excess of the policy limits. *Id.* 183 W.Va. at 587, 396 S.E.2d at 768, Syl.Pts. 1 and 4.

There is, however, no strong public policy in this state which mandates that an insurer is required to pay prejudgment interest in excess of the stated policy limits regardless of the insurer's conduct. Thus, the appellee argues that this Court should follow the public policy argument advanced in the *Denham v. Bedford,* 407 Mich. 517, 287 N.W.2d 168 (1980) decision. In *Denham,* the Supreme Court of Michigan held that the Michigan Prejudgment Interest Statute[11] applies to insurance contracts and therefore, an insurer may be obligated to pay interest in excess of the stated policy limits. 287 N.W.2d at 168–69.

The public policy rationale relied upon by the *Denham* court in its decision was that

> [p]ayment of prejudgment interest not only compensates the prevailing party but also liability for prejudgment interest may act as an incentive to the insurer to promptly settle a meritorious claim. Without such an incentive, the insurer may refuse to settle a meritorious claim in hopes of forcing plaintiff to settle for less than the claim's true value. The insurer risks nothing. Even if protracted litigation results, the insurer will only be liable for its policy limits—all the while reaping a tidy sum from its investment of the policy limits.

*Id.* at 175.

We refuse to follow the holding as set out in *Denham* for two basic reasons. First, the *Denham* holding does not take into account the conduct of the insurer. Second, as noted in *Denham,* "[t]he insurer retained control over any investigation process, settlement or litigation" according to the terms of the insurance policy. *Id.* at 174. This was not the case in the matter presently before this Court, since the insurance contract specifically stated that Kimball had to give written consent before Continental Casualty could settle the case. Moreover, this Court is not the first to reject the reasoning and decision of the *Denham* court. *See Allstate Ins. Co. v. Starke,* 797 P.2d 14 (Colo.1990); *Farm Bureau Mut. Ins. Co. v. Milne,* 424 N.W.2d 422 (Iowa 1988); *Nunez v. Nationwide Mut. Ins. Co.,* 472 A.2d 1383, 1384–85 n. 6 (Me.1984); *Balder v. Haley,* 441 N.W.2d 539, 543 (Minn.App.1989).

The majority of jurisdictions have held that insurers are not liable for prejudgment interest in excess of stated policy limits. *See Guin v. Ha,* 591 P.2d 1281 (Alaska 1979); *Starke,* 797 P.2d 14; *Farm Bureau Mut. Ins.,* 424 N.W.2d 422; *Nunez,* 472 A.2d 1383; *Balder,* 441 N.W.2d 539; *Laplant v. Aetna Casualty & Sur. Co.,* 107 N.H. 183, 219 A.2d 283 (1966); *Kotzian v. Barr,* 81 N.J. 360, 408 A.2d 131 (1979); *Bossert v. Douglas,* 557 P.2d 1164 (Okla.App.1976); *Factory Mut. Liab. Ins.*

**11.** *Denham,* 287 N.W.2d at 170 (quoting M.C.L. § 600.6013; M.S.A. § 27A.6013).

**590**

*Co. v. Cooper*, 106 R.I. 632, 262 A.2d 370 (1970).

For instance, in *Guin*, the Supreme Court of Alaska specifically rejected the public policy arguments dealing with prompt settlements and economic fairness to the insured in refusing to hold the insurer liable for prejudgment interest in excess of the policy limits. 591 P.2d at 1291. Further, the *Guin* court stated that

the insured defendant will not be at the mercy of the dilatory or uncooperative insurance company. In every contract, including policies of insurance, there is an implied covenant of good faith and fair dealing that neither party will do anything which will injure the right of the other to receive the benefits of the agreement. This covenant encompasses an obligation on behalf of the insurer to accept reasonable offers of settlement in a prompt fashion. The insured defendant, for his part, both fulfills his contractual duty and protects his own interest by cooperating fully with his insurer. If the insurer causes undue delay in either settlement of a claim or in bringing a case to trial, it may constitute a breach of the implied covenant of good faith. The insured may recover from his insurer any prejudgment interest attributable to the bad faith of the insurer, regardless of policy limits.

*Id.* (footnotes omitted).

The insured does not have to get caught holding the bag for the excess liability for prejudgment interest. As the *Guin* court noted, the insured can take out additional insurance coverage for prejudgment interest that may be awarded in excess of the stated policy limits. *Id.*

Following the *Guin* decision, we hold that absent a bad faith claim against the insurer, prejudgment interest in excess of stated policy limits may not be assessed against the insurer without a policy provision providing therefor. In applying this rule to the present case, it was improper for the lower court to hold the insurer accountable for the prejudgment interest since there was no claim made by the appellee of bad faith on the part of the insur-

er nor any evidence presented of bad faith by the insurer.

Based upon the foregoing opinion, we reverse the circuit court's answers in part as being inconsistent with the answer reached in this opinion. This action is hereby dismissed from the docket of this Court.

Certified Questions Answered.