Cary Michael CARNEY, Appellant,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, a foreign corporation, Defendant/Appellee,

Lindell Dell Overstreet, individually, Defendant.

No. 76928.

Supreme Court of Oklahoma.

June 21, 1994.

Stephen C. Wolfe, Wolfe & Vogle, P.C., Tulsa, for appellant.

Brad Smith and Dennis King, Knowles, King & Smith, Tulsa, for appellee.

ALMA WILSON, Justice:

On January 30, 1986, the appellant, Cary Michael Carney, was injured in an automobile accident. He filed an action against the defendant, Lindell Dell Overstreet and State Farm Insurance, Carney's uninsured motorist (UM) carrier, on February 13, 1986. A motion for default judgment on the issue of liability was sustained against Overstreet on April 28, 1986. In the subsequent trial to determine damages, the jury returned a verdict for Carney against State Farm in the amount of $130,000.00. Carney submitted his Journal Entry of Judgment to add pre-judgment interest in the amount of $73,545.88 to the jury verdict against Carney's insurer. The trial court issued its Journal

Entry, October 11, 1990, denying prejudgment interest. From the decision of the trial court, Carney appealed and the Court of Appeals affirmed the trial court's decision. In its opinion, the Court of Appeals, Division 1, rendered a decision in conflict with that of Division 3, *Mellenberger v. Sweeney*, 800 P.2d 747 (Okla.Ct.App.1990). The Court of Appeals, Division 1, cited the *Mellenberger* decision and stated its disagreement with the result. Upon the petition of the appellant, this Court granted certiorari to resolve the conflict between the two divisions of the Court of Appeals.[1] Subsequent to the grant of certiorari, this Court cited the *Mellenberger* opinion in footnote 9 of *Torres v. Kansas City Fire and Marine Ins. Co.*, 849 P.2d 407, 414 (Okla.1993), noting our approval of that court's "correct recognition [that] a UM carrier may be liable for prejudgment interest."

*Torres* involved a wrongful death due to a one-car accident, caused by a coemployee. The decedent was included as an insured within the definition of that term in his employer's uninsured motorist policy. *Torres*, 849 P.2d at 409. The personal representative of the estate sued the insurance carrier. The jury returned a verdict against the carrier for $350,000.00 on a $500,000.00 policy, and the trial court added prejudgment interest to the verdict from the date the estate filed its petition, in the amount of $34,912.64.

The insurer appealed and asserted, as one of its issues, error in the trial court's award of prejudgment interest based upon 12 O.S. 1991, § 727(A)(2).[2] The Court of Appeals, Division 3, affirmed the judgment of the trial court. This Court granted certiorari, vacated the Court of Appeals opinion and affirmed the judgment of the trial court, holding that the essence of the lawsuit against the uninsured motorist carrier was to recover for personal injuries. Section 727, which mandates prejudgment interest, is therefore applicable. *Torres*, 849 P.2d at 414.

■ Like the *Torres* case, Carney filed a lawsuit against the UM carrier. Both the Torres estate and Carney received judgments against their respective insurers. In *Torres*, the insured's estate was granted prejudgment interest from the date the petition was filed to the date of verdict.[3] *Torres*, 849 P.2d at 409. The *Torres* case is dispositive of whether an insured shall receive prejudgment interest from his UM carrier, and when that interest begins to accrue. Carney has asked for $73,545.88 in prejudgment interest. That amount, when added to the judgment of $130,000.00, exceeds the UM policy limits of $200,000.00. The issue left unaddressed is whether the portion of prejudgment interest that exceeds the UM policy limits is payable by the insurer to the insured.

1. Rule 3.13(A)(3), Rules on Practice and Procedure in the Court of Appeals and on Certiorari to that Court, 12 O.S.1991, ch. 15, app. 3 provides that certiorari may be granted in this Court's discretion when special and important reasons exist for such grant. One of the specific reasons listed for consideration of the granting of certiorari is "Where a division of the Court of Appeals has rendered a decision in conflict with the decision of another division of that court...."

2. Subsection 2 provides: *"When a verdict for damages by reason of personal injuries or injury to personal rights* including, but not limited to, injury resulting from bodily restraint, personal insult, defamation, invasion of privacy, injury to personal relations, or detriment due to an act or omission of another *is accepted by the trial court, the court in rendering judgment shall add interest on said verdict at a rate prescribed pursuant to subsection B of this section from the date the suit was commenced to the date of verdict,* except such verdict against this state and its political subdivisions, including counties, municipalities, school districts, and public trusts of which this state or a political subdivision of this state is a beneficiary,

shall bear interest at the rate prescribed pursuant to subsection B of this section, but not to exceed ten percent (10%) from the date the suit was commenced to date of verdict, provided that if exemplary or punitive damages are awarded in an action for personal injury or injury to personal rights including, but not limited to, injury resulting from bodily restraint, personal insult, defamation, invasion of privacy, injury to personal relations, or detriment due to an act or omission of another, the interest on said award shall commence as of the date the judgment is entered by the trial court...." [Emphasis added.] 1986 Okla.Sess.Laws, ch. 315, § 4.

3. An earlier date than the petition in a lawsuit may be established for calculating when prejudgment interest begins to accrue, if the amount due the insured becomes fixed at an earlier date. In *Nunn v. Stewart*, 756 P.2d 6, 7 (Okla.1988), that earlier date was fixed when the insurer confessed the liability of the uninsured motorist. The statutory authority for the interest set in *Nunn* was 23 O.S.1981, § 22.

■ Under certain conditions, this Court has imposed liability on insurers in excess of policy limits. In *Allstate Ins. Co. v. Amick*, 680 P.2d 362, 364 (Okla.1984), the Court cited *American Fidelity and Casualty Co. v. L.C. Jones Trucking Co.*, 321 P.2d 685 (Okla.1958) and *National Mut. Casualty Co. v. Britt*, 203 Okla. 175, 200 P.2d 407 (1948), wherein the Court recognized the duty to act in good faith toward the insured by accepting reasonable settlements. For the breach of this duty, this Court imposed liability in excess of policy limits. *Christian v. American Home Assurance Co.*, 577 P.2d 899 (Okla.1977), cited 36 O.S.1971, § 4405(A)(8)[4] observed that the Insurance Code required insurance companies to make immediate payment of claims. This statutory duty recognized that a substantial part of the right purchased by an insured is the right to receive the policy benefits promptly, and further observed that "Unwarranted delay precipitates the precise economic hardship the insured sought to avoid by purchase of the policy." *Christian*, 577 P.2d at 903.

*McCorkle v. Great Atlantic Ins. Co.*, 637 P.2d 583, 588 (Okla.1981), recognized that the duty of good faith to one's own insured extended to all types of insurance companies. The Court commented:

> We believe that the purchaser of insurance does not contract to obtain a commercial advantage but to protect himself/herself against the risks of accidental losses and the mental stress which could result from such losses. Therefore, we think one of the primary reasons a consumer purchases any type of insurance (and the insurance industry knows this) is the peace of mind

and security that it provides in the event of loss.

*McCorkle*, 637 P.2d at 588.

But in the case at bar, there is no evidence before this Court that appellee's conduct in litigating the appellant's claim constituted bad faith. The question remains whether a UM insurer may be required to pay prejudgment interest awarded its insured against a third party tortfeasor in excess of policy limits regardless of the insurance contract, and regardless of the conduct of the insurer.

The large majority of jurisdictions which have considered the issue have held that insurers are not liable for prejudgment interest beyond a policy's liability limit. *Lessard v. Milwaukee Ins. Co.*, 514 N.W.2d 556, 559 (Minn.1994). In support of this assertion *Lessard* cites five cases, including *Bossert v. Douglas*, 557 P.2d 1164 (Okla.Ct.App.1976). Although *Lessard* is an uninsured motorist case, none of the cases cited to support its assertion are uninsured motorist cases. With the exception of *Guin v. Ha*, 591 P.2d 1281 (Alaska 1979), which is a medical negligence case, the cases supporting the assertion are liability cases. Case law from sister states reveal that liability insurers and UM insurers receive the same treatment with respect to prejudgment interest exceeding policy limits. Iowa appears to be an exception.[5] In an underinsured motorist case, the Supreme Court of North Carolina held that the underinsured motorist carrier was responsible for prejudgment interest "up to its policy coverage limit." *Baxley v. Nationwide Mut. Ins. Co.*, 334 N.C. 1, 430 S.E.2d 895, 900 (1993). In support of this holding, the North Carolina court stated that its decision was in accord with the position taken by

4. The Insurance Code required at that time, and still requires insurance companies to include the following provision as a standard clause in all individual accident and health policies: "TIME OF PAYMENT OF CLAIMS: Indemnities payable under this policy for any loss ... will be paid immediately upon receipt of due written proof of such loss." (Quoted in *Christian*, 577 P.2d at 903.

5. Iowa appears to be an exception. In *Farm Bureau Mut. Ins. Co. v. Milne*, 424 N.W.2d 422 (Iowa 1988), a liability case, the Iowa court refused to override the parties' contract by allowing prejudgment interest to exceed the policy

limits. Conversely, *Vasquez v. LeMars Mut. Ins. Co.*, 477 N.W.2d 404 (Iowa 1991), an underinsured motorist case, held that prejudgment interest could exceed the policy limits, not because the interest was an element of damages for bodily injury, but because it was an element of damages for breach of contract. *Lessard*, in footnote 5, found prejudgment interest to be a part of the underlying tort claim giving rise to liability. *Lessard*, 514 N.W.2d at 558. Because 12 O.S.1991, prejudgment interest pursuant to § 727(A)(2) is based upon tort liability and not upon contract, we agree with the analysis of the Minnesota court.

a majority of other jurisdictions, and cited liability,[6] medical malpractice,[7] and underinsured motorist[8] cases. The court's rationale for denying recovery over policy limits was based in its finding that prejudgment interest is an element of damages. As such, the interest is added to the verdict and the entire amount is paid by the insurer under the coverage portion of the policy up to the policy limits.[9] *Baxley*, 430 S.E.2d at 900.

In *Nielsen v. O'Reilly*, 848 P.2d 664 (Utah 1992), the Supreme Court of Utah faced an identical issue on similar facts. The plaintiff in that case sued his UM insurer and the tortfeasors involved in an automobile accident. The tortfeasors were uninsured and defaulted when the case came to jury trial. One of the issues was whether the plaintiff could recover prejudgment interest from his UM carrier in excess of the policy limits. The Utah court observed that a majority of courts have interpreted the language in insurance policies "all sums which the insured ... shall be legally entitled to recover as damages" to include prejudgment interest properly awarded in the underlying personal injury action. *Nielsen*, 848 P.2d at 670. Like the North Carolina court, the Utah court cited liability cases to support its holding that prejudgment interest could not exceed the limits of the UM policy.[10] *Nielsen*, 848 P.2d at 670.

A leading minority case is *Denham v. Bedford*, 407 Mich. 517, 287 N.W.2d 168 (1980). In *Denham*, a liability policy case, a verdict was entered against the tortfeasor that exceeded his policy limits, and included an additional amount in prejudgment interest. The court observed that several jurisdictions had refused to allow prejudgment interest in excess of the policy limits, but that those decisions ignored the long-standing common-

law tradition of allowing interest in excess of the policy limits. The court further observed that these jurisdictions were at odds with the very purpose of allowing interest, that is, as a compensation to the prevailing party for the delay in payment. The opinion quoted an earlier edition of Appleman:[11]

> Since this part of the insured's liability is controlled by the time required for litigation, a matter largely under the control of the insurer, which by contract insisted upon this control, the courts as a matter of public policy should strike down any provision barring the insurer from being liable for prejudgment interest. Any other result allows the insurer to engage, with impunity, in delaying tactics at the expense of the insured.

The Michigan court approved the comment, and concluded that the comment was validated by Michigan's prejudgment interest statute, which mandated the payment of prejudgment interest.

The reasoning of the Michigan court has been challenged by other courts in sister states. The Supreme Court of Appeals of West Virginia, in two cases arising from construction of an airport, observed that an insurer is only required to pay prejudgment interest in excess of the policy limits if such coverage is provided for in the insurance policy, or if public policy mandated such protection. It concluded that its prejudgment interest statute did not require an insurer to pay prejudgment interest absent such a provision in the insurance policy. *Buckhannon–Upshur County Airport Authority v. R & R Coal Contracting*, 186 W.Va. 583, 413 S.E.2d 404, 408 (1991). In examining its public policy, it cited the *Denham* case. *Buckhannon–Upshur*, 413 S.E.2d at 410.

---

6. *Allstate Ins. Co. v. Starke*, 797 P.2d 14 (Colo. 1990), *Factory Mut. Liability Ins. Co. of American v. Cooper*, 106 R.I. 632, 262 A.2d 370 (1970).

7. *Guin v. Ha*, 591 P.2d 1281 (Alaska 1979).

8. *Brinkman v. Aid Ins. Co.*, 115 Idaho 346, 766 P.2d 1227 (1988).

9. Appleman's multivolumed treatise states: "The great majority of courts that have considered the issue have held that an insurer's obligation to pay a prejudgment award against its insured is

subject to the policy's damage coverage limits because prejudgment interest is considered an element of compensatory damages." 8A J. Appleman & J. Appleman, Insurance Law and Practice, § 4894.25 (1993 Supp.).

10. The Utah court cited *Guin*, *Factory Mut. Liability Ins. Co. of America*, and also cited 15S Couch on Insurance 2d, § 56:10.

11. The court cited "8 Appleman, Insurance Law and Practice § 4899 (1979 supp.)."

The West Virginia court observed that the *Denham* court had relied upon public policy in its decision, and quoted the following from *Denham*, 287 N.W.2d at 175:

> [P]ayment of prejudgment interest not only compensates the prevailing party but also liability for prejudgment interest may act as an incentive to the insurer to promptly settle a meritorious claim. Without such an incentive, the insurer may refuse to settle a meritorious claim in hopes of forcing plaintiff to settle for less than the claim's true value. The insurer risks nothing. Even if protracted litigation results, the insurer will only be liable for its policy limits—all the while reaping a tidy sum from its investment of the policy limits.

*Buckhannon–Upshur*, 413 S.E.2d at 410. The West Virginia court refused to follow the holding in *Denham* for two reasons. The court first found that the *Denham* holding did not take into account the conduct of the insurer. The second reason was that the insurer retained control over the investigation process, settlement and litigation in *Denham*, but that the facts before the West Virginia court allowed the insured to control the settlement. That court also observed that the majority of jurisdictions had held that insurers are not liable for prejudgment interest in excess of stated policy limits. *Buckhannon–Upshur*, 413 S.E.2d at 410.

The Supreme Court of Iowa, in *Farm Bureau Mut. Ins. Co. v. Milne*, 424 N.W.2d 422, 425 (Iowa 1988), quoted the same cite from *Denham* as the West Virginia Supreme Court. The Iowa court commented that it shared the Michigan court's concern for the prompt settlement of meritorious claims but was convinced that the reasoning in *Denham* ignored the insurer's risk of a bad faith refusal to promptly settle a claim. A judgment for the insured could result in both compensatory and punitive damages. *Milne*, 424 N.W.2d at 425. The Iowa court added that it was unwilling to rewrite the parties'

insurance contract in order to achieve the salutary goal of minimizing protracted litigation. *Milne*, 424 N.W.2d at 425. The Iowa court then quoted Alaska's *Guin* case where that court observed:

> The effect of allowing prejudgment interest in an amount beyond policy limits would be to force an insurance company to acquiesce to a plaintiff's demand at an early stage of the proceedings where it may have a meritorious defense, rather than run the risk of paying a large amount of prejudgment interest due to the delays engendered by crowded dockets should the plaintiff eventually recover.

*Milne*, 424 N.W.2d at 425–426.[12] The Iowa court concluded that compelling public policy reasons did not exist to justify overriding the plain allocation of responsibilities expressed in the parties' contract. *Milne*, 424 N.W.2d at 426.[13]

The appellant advances the public policy argument, that pursuant to statute, the appellee should be liable for prejudgment interest exceeding the policy limits. He argues that the insurance statutes require that limits to a liability policy are exclusive of interest and costs, and that 36 O.S.1991, § 3636 requires that the limits offered must meet the mandate of 47 O.S.1991, § 7–204. This section sets a limit of not less than $10,000.00 for one person, exclusive of interest and costs. During the interim of appeal for the case at bar, the Court of Appeals, Division 1, rendered a decision on whether the payment of prejudgment interest is subject to the limits of an uninsured motorist policy and held that it is not. *Phillips v. State Farm Mut. Auto. Ins. Co.*, 848 P.2d 70 (Okla.Ct. App.1993). The *Phillips* court used the same reasoning advanced by the appellant to support its holding.

In *Phillips*, the court reasoned that under 36 O.S.1991, § 3636, all uninsured motorist policies issued in Oklahoma must offer coverage equal to the limits set in 47 O.S.1991,

---

**12.** The Iowa court was quoting *Guin v. Ha*, 591 P.2d 1281, 1291 (Alaska 1979), which quoted the Michigan Court of Appeals case of *Dittus v. Geyman*, 68 Mich.App. 433, 242 N.W.2d 800, 805 (1976).

**13.** In *Allstate Ins. Co. v. Starke*, 797 P.2d 14, 20 (Colo.1990), the Colorado Supreme Court also rejected the *Denham* court's reasoning concerning prejudgment interest exceeding policy limits, and cited *Milne* with approval.

§ 7–204, including any liability coverage over the minimum set in § 7–204. As authority, the court cites *Barfield v. Barfield,* 742 P.2d 1107, 1112 (Okla.1987). Title 36 O.S.1991, § 3636(B) provides in pertinent part:

> [Uninsured motorist coverage] shall be not less than the amounts or limits prescribed for bodily injury or death for a policy meeting the requirements of Section 7–204 of Title 47 of the Oklahoma Statutes, as the same may be hereafter amended; provided, however, that increased limits of liability shall be offered and purchased if desired, not to exceed the limits provided in the policy of bodily injury liability of the insured.

Title 47 O.S.1991, § 7–204(a) provides in pertinent part:

> No policy or bond shall be effective under Section 7–203 of this title unless issued by an insurance company or surety company authorized to do business in this state, except as provided in subdivision (b) of this section, *nor unless such policy or bond is subject, if the accident has resulted in bodily injury or death, to a limit, exclusive of interest and costs,* of not less than Ten Thousand Dollars ($10,000.00) because of bodily injury to or death of one person in any one accident. . . .

(Emphasis added.) The court in *Phillips* concluded that if prejudgment interest were merely included up to the policy limits, the uninsured motorist coverage available would not equal the liability limits. For the limits of both the UM coverage and the liability coverage to be equal, both must be construed to be "exclusive of interest and costs." *Phillips,* 848 P.2d at 72.

We reject the reasoning in *Phillips.* The legislature intended that liability policies and UM policies, which are not rejected, carry the minimum of $10,000.00 coverage, exclusive of interest and costs. When an insured carries the minimum coverage, public policy may intervene to require that interest and costs be added to the minimum coverage, but that is not a fact before this Court in the case at bar, and we reach no decision on that issue at this time.[14] The coverage here is $200,-000.00. There is no public policy that would make the coverage $200,000.00, exclusive of interest and costs.

We have previously noted that the majority of courts base their refusal to allow prejudgment interest to exceed policy limits on their finding that such interest is an element of damages.[15] Oklahoma, in *Fleming v. Baptist General Convention,* 742 P.2d 1087, 1096 (Okla.1987), has already held that interest is not an element of damages. *Fleming* was a negligence action brought against a hospital. After the plaintiff was awarded damages, the trial court also awarded prejudgment interest pursuant to 12 O.S.Supp.1979 § 727. "Prejudgment interest compensates the plaintiff for the loss of use of his compensatory damages from the time the cause of action accrued until the date of judgment; money to which the plaintiff is entitled." *Fleming,* 742

---

**14.** This issue was addressed by the Supreme Court of Alaska when it recently construed the phrase "subject to limits exclusive of interests and costs." *Hughes v. Harrelson,* 844 P.2d 1106 (Alaska 1993). In *Hughes* the Alaska court reviewed its decision on prejudgment interest exceeding policy limits originally addressed in their *Guin* case, cited above. *Guin* has been frequently cited as support for denying prejudgment interest over policy limits. But *Guin* involved medical malpractice, and *Hughes* involved an automobile liability policy. The *Hughes* court observed that it had previously ruled that an insurer must have assumed an obligation in the contract in order to be held liable for prejudgment interest, or in the alternative, public policy must intervene and impose the obligation despite the terms of the contract. *Hughes,* 844 P.2d at 1106, citing *Guin,* 591 P.2d at 1284.

The Alaska court did not find an intervening public policy that would impose prejudgment interest beyond the policy limits on the insurer in *Guin.* But in *Hughes,* the court focused on the Alaska Motor Vehicle Responsibility Act, concentrating on the phrase "subject to limits exclusive of interests and costs," and their Mandatory Insurance Act containing a similar phrase. The Alaska court then held that "an insurer must pay prejudgment interest on the minimum policy limits established in AS 28.20.440(b) and AS 28.22.-101(d)." *Hughes,* 844 P.2d at 1108. Prejudgment interest was not be taken into account when calculating the mandated minimum policy limit for bodily injury or death. The *Hughes* court cited the Oklahoma Court of Appeals case of *Mellenberger* and the Michigan Supreme Court case of *Denham.*

**15.** 8A J. Appleman & J. Appleman, Insurance Law and Practice, § 4894.25 (1993 Supp.).

P.2d at 1096. This Court found that such a rule fostered settlement of meritorious claims and stood as an attempt to relieve congestion in the court system. In reviewing the issue of whether the trial court erred in failing to instruct the jury of the existence of the interest statute, we held that interest is not an element of damages in a personal injury action. *Torres*, citing *Fleming*, held that prejudgment interest under § 727(A)(2) is not an element of damages, but a monetary recovery mandated by the legislature in cases brought to recover for personal injuries. *Torres*, 849 P.2d at 414. The reason the insurer was liable to pay monetary relief was because of its contractually based duty to pay under the UM endorsement. Both *Fleming* and *Torres* discuss prejudgment interest not being an element of damages in the context of the impropriety of submitting the issue to the jury for its consideration. *Torres* then reasons that because the tortfeasor is liable for prejudgment interest, the UM carrier is likewise liable. *Torres*, 849 P.2d at 414.

The Supreme Court of Texas, in *Cavnar v. Quality Control Parking, Inc.*, 696 S.W.2d 549 (Tex.1985), observes that the term "interest" encompasses two distinct forms of compensation: interest as compensation allowed by law for the use or detention of money, and interest as damages allowed by law as additional damages for lost use of the money due as damages during the lapse of time between the accrual of the claim and the date of judgment. *Cavnar*, 696 S.W.2d at 552. The Texas court, in this wrongful death case, stated that prejudgment interest was recoverable regardless of whether it was characterized as damages or as interest.[16]

Of the two forms of interest compensation described by the Texas court, the prejudgment interest allowed by *Torres* is more nearly described as interest for the lost use of the money due as damages during the lapse of time between the date of commencement of the action and the date of judgment. Prejudgment interest pursuant to 12 O.S. 1991, § 727(A)(2) is interrelated to the tort claim, which is the basis for liability. However prejudgment interest is characterized, § 727(A)(2) adds prejudgment interest to the damages in personal injury cases. This Court has observed that UM coverage merely provides a source of recovery for personal injuries when an innocent victim cannot otherwise recover from the tortfeasor. *Torres*, 849 P.2d at 414. The UM carrier is liable for damages caused by the tortfeasor and for the statutorily mandated prejudgment interest on those damages. *Torres*, 849 P.2d at 414. But the carrier's liability is limited by the contract, and we find no public policy reason to extend that liability beyond the terms of the contract.

The concerns of our sister states that allow prejudgment interest to exceed the contractual limits, are met by our cases dealing with bad faith. When an insurer's delay in paying is unwarranted, such as to amount to bad faith, our case law is sufficient to protect the insured under such circumstances. We hold that uninsured motorist carriers are liable for prejudgment interest on damages pursuant to 12 O.S.1991, § 727(A)(2), not exceeding the policy limits.[17] *Phillips v. State Farm Mut. Auto. Ins. Co.*, 848 P.2d 70 (Okla. Ct.App.1993) is overruled.

Certiorari having previously been granted, the opinion of the Court of Appeals is VACATED, and the judgment of the trial court

16. Subsequently, the Texas Court of Appeals, in an uninsured motorist case, *Potomac Ins. Co. v. Howard*, 813 S.W.2d 557 (Tx.App.1991), cited *Cavnar*, and allowed prejudgment interest to exceed the policy limits where the insurer had delayed payment of its insured's claim from September 1986 to August 1990. The court reasoned that such an award promoted prompt attention to the insured's claim. We have no evidence of unreasonable delay in the case at bar.

17. This holding does not affect this Court's holding in *Nunn v. Stewart*, 756 P.2d 6 (Okla.1988),

where the insurer in an underinsured motorist case was required to pay interest pursuant to 23 O.S.1981, § 22, where the underinsured motorist carrier confessed the liability of the underinsured motorist at a date earlier than judgment and the Court held that interest on the amount due to the insured under the provision of the polices ran from that date. *Nunn*, 756 P.2d at 7. Having confessed liability, the insurer admitted its obligation under the contract and became liable for interest pursuant to § 22.

is REVERSED AND REMANDED with instructions to calculate and award prejudgment interest to the appellant pursuant to this opinion.

HODGES, C.J., LAVENDER, V.C.J., and SIMMS, HARGRAVE, SUMMERS and WATT, JJ., concur.

KAUGER, J., concurs in result.