2004 OK 62

**Jackie PARISH, Guardian of the Person and the property of Durand Vernon PARISH, Plaintiff–Appellee,**

**v.**

**Millard Lafayette HENRY, M.D., and Jim A. Bolene, M.D., Defendants,**

**and**

**Physicians Liability Insurance Company, a/k/a PLICO, Garnishees–Appellants.**

No. 98,834.

Supreme Court of Oklahoma.

July 6, 2004.

As Corrected July 21, 2004.

**scription purposes** nor was indexing done by VIN at the County Clerk's office, but by debtors' names.

Catherine L. Campbell, Matthew B. Free, Best & Sharp, Tulsa, OK, for Garnishees–Appellants.

Robert W. Nelson, Derrick T. Dewitt, Whitten, Nelson, McGuire, Wood, Terry, Roselius & Dittrich, Tulsa, OK, and John Hargrave, Edmonds, Cole, Hargrave, Givens, Witzke, Woodson & Ryan, Oklahoma City, OK, for Plaintiff–Appellee.

WATT, C.J.

## FACTS AND PROCEDURAL BACKGROUND

¶1 Defendant, Millard Lafayette Henry, M.D., had a $1,000,000.00 professional liability insurance policy with defendant insurer, Physicians Liability Insurance Company, also known as PLICO. Plaintiff, Jackie Parish, as guardian of her ward, Durand Vernon Parish, brought suit for medical malpractice against Dr. Henry and others. The malpractice case was tried in the District Court of Muskogee County in September 2002 and the jury returned a plaintiff's verdict against Dr. Henry in excess of the policy limits in the amount of $1,750,000.00. The trial court entered judgment against Dr. Henry in the amount of the verdict plus $442,934.11 in prejudgment interest.

¶2 Plaintiff filed a garnishment action against PLICO as Dr. Henry's liability insurance carrier. There is no issue as to PLICO's liability to pay its policy limits, plus accrued postjudgment interest. The parties filed cross-motions for summary judgment on the issue of whether PLICO should be required to pay the $442,934.11 prejudgment interest award.[1] The trial court denied PLICO's motion for summary judgment and granted plaintiff's motion for summary judgment. PLICO appealed under the accelerated procedure for appealing from summary judgments, Supreme Court Rules, Rule 1.36.

¶3 As part of the evidentiary materials submitted in support of its motion for summary judgment PLICO filed the affidavit of its insured, Dr. Henry, in which the doctor stated:

> That approximately one year before the trial of this case my counsel advised me of the plaintiff's desire to mediate the matter, and further advised me that the plaintiff had offered to settle the case for the limits of my policy. I declined to mediate and, further, declined the settlement offer.

> That during the trial of this case in September, 2002, I was advised by my counsel that the plaintiff again had made an offer to settle the case for my policy limits. I again declined that offer.

PLICO's policy of insurance provides that settlement of any claim shall be "with the written consent of the insured." The policy also provides that PLICO shall not be obligated to pay any claims "after the applicable Limits of Liability have been exhausted."[2]

---

1. PLICO also asserted in the trial court that it should not be required to pay postjudgment interest on the part of the judgment that exceeded the limits of PLICO's policy. That issue, however, is not before us on appeal.

2. In its "Coverage Agreements" the policy provides:

> The Company shall have the right and duty to defend any suit against the Insured seeking damages because of such injury even if any of the allegations of the suit are groundless, false or fraudulent. The Company may make such investigation and, *with the written consent of the Insured,* such settlement of any claim or suit as it

## ISSUE

■ ¶ 4 Under the undisputed facts before us is PLICO liable to plaintiff for the prejudgment interest portion of plaintiff's judgment against Dr. Henry that exceed's PLICO's policy limits?

We answer, "no."

## DISCUSSION

¶ 5 We hold that the issue before us is resolved by *Carney v. State Farm Auto. Ins. Co.* 1994 OK 72, 877 P.2d 1113. There, we held: "[Insurance] carriers are liable for prejudgment interest on damages pursuant to 12 O.S.1991 § 727(A)(2) *not exceeding the policy limits.*" [Emphasis added.] *Carney* at ¶ 19. We noted, "The large majority of jurisdictions which have considered the issue have held that insurers are not liable for prejudgment interest beyond a policy's liability limit." Although *Carney* involved an uninsured motorist policy, we observed that "Case law from sister states reveal that liability insurers and UM insurers receive the same treatment with respect to prejudgment interest exceeding policy limits." *Carney* at ¶ 7. Thus, the same considerations apply in this medical malpractice insurance case as applied in *Carney.*

¶ 6 In *Carney,* we quoted with approval language from *Farm Bureau Mut. Ins. Co. v. Milne,* 424 N.W.2d 422, 425–426 (Iowa 1988), which in turn had quoted *Guin v. Ha,* 591 P.2d 1281 (Alaska 1979). *Ha* was a medical malpractice coverage case. The language that the Iowa court quoted from *Ha* explains the potential for unfairness created by requiring an insurer to pay prejudgment interest beyond policy limits:

> The effect of allowing prejudgment interest in an amount beyond policy limits would be to force an insurance company to acquiesce to a plaintiff's demand at an early stage of the proceedings where it may have a meritorious defense, rather than run the risk of paying a large amount of prejudgment interest due to the delays engendered by crowded dockets should the plaintiff eventually recover.

deems expedient, but *the Company shall not be obligated to pay any claims or judgments or to defend any suits after the applicable Limits of the*

For the reasons discussed below, we hold that requiring PLICO to pay prejudgment interest in excess of its policy's limits, although its insured, Dr. Henry, had instructed it not to settle, would be to unreasonably require PLICO "to acquiesce to a plaintiff's demand at an early stage of the proceedings."

¶ 7 Plaintiff claims that the issue in this appeal should be governed by *McDonald v. Schreiner,* 2001 OK 58, 28 P.3d 574. We disagree. In *McDonald,* we answered a narrow question of state law certified to us by the United States Court of Appeals for the 10th Circuit. The 10th Circuit asked us whether the term "claim expense" in the medical malpractice policy there involved covered prejudgment interest "that accrues *while the insurer decides to defend, rather than negotiate and pay* ..." [Emphasis added.] *McDonald* at ¶ 1. We answered the question in the affirmative but emphasized that the prejudgment interest that fell within the definition of the Policy's term "claim expense," would be " 'claim expense' that *arises from defense conduct.*" [Emphasis added.] *McDonald* at ¶ 4. We stressed that in order to be payable such interest

> ... must be *solely* within the insurer's power to control [and] would not arise *but for Continental's decision as unquestionable dominus litis.* Shifting to the insured the attendant financial burden of waging litigation the insurer undertook to conduct in the defense of the claim would contravene the clear language of the policy."

[Emphasis added.] *McDonald* at ¶ 11.

■ ¶ 8 Our analysis of *McDonald* and *Carney,* leads us to the inescapable conclusion that an insurer may not be held liable for prejudgment interest in excess of the policy's limits unless the insurer has sole control over the litigation. Where, as here, the insured has the express right under the policy to disapprove any settlement offer and does so the insurer is not liable for any increment of prejudgment interest that exceeds the policy's limits. This is the only

*Company's Liability have been exhausted* by payments or judgments or settlements.
[Emphasis added.]

sensible conclusion because, as will be demonstrated in this opinion, the legal rights accorded to the plaintiff by its judgment are not affected by whether PLICO must pay prejudgment interest in excess of its policy limits.

¶ 9 Plaintiff's judgment entitled her to collect the full amount of prejudgment interest awarded under the judgment's terms from Dr. Henry. But plaintiff is a stranger to Dr. Henry's insurance contract with PLICO. Dr. Henry twice directed PLICO not to settle, although plaintiff's offer was within the limits of the policy. Under these circumstances Dr. Henry assumed responsibility for any excess award the plaintiff might receive. Thus, there is no basis for shifting to PLICO Dr. Henry's responsibility under the plaintiff's judgment for the increment of the prejudgment interest award that exceeded PLICO's policy limits.

¶ 10 Here, unlike the situation presented to us by the 10th Circuit in *McDonald,* there is nothing unfair, as we held there was in *McDonald,* in "shifting to the insured the attendant financial burden of waging litigation ..." *McDonald* at ¶ 11. Plaintiff would have us hold that so long as PLICO declined a settlement offer within the policy's limits it was liable for prejudgment interest beyond the policy's limits, although Dr. Henry exercised his right under the policy to direct the insurer not to settle. But that was a decision for the insurer and the insured to make and the fact that they agreed not to settle within policy limits cannot be held to have given the plaintiff in the underlying malpractice suit the right to recover an excess judgment against the insurer. As a stranger to the insurance contract, plaintiff has no legal basis for such a claim. Plaintiff obtained a judgment against Dr. Henry, which she had a right to collect from him, although the judgment exceeded the insurance policy's limits of liability. Dr. Henry directed PLICO not to settle and thereby assumed the risk of having to pay a judgment that exceeded his

policy's limits. Plaintiff is entitled to no more.

¶ 11 We need not decide whether under the language of Dr. Henry's policy PLICO might have been liable for prejudgment interest exceeding the policy's limits had the accrual of such interest been, as we said in *McDonald,* "solely within the insurer's power to control." Any other result would effectively overrule *Carney,* which we expressly distinguished in *McDonald.*[3] As noted, only a small minority of jurisdictions hold that an insurer is liable for prejudgment interest beyond its policy's limits. We are not prepared to join that minority, which we would surely do if we accepted plaintiff's arguments and applied *McDonald* to the facts of this appeal. We hold, therefore, that under the teachings of *Carney,* PLICO is not responsible for the portion of plaintiff's prejudgment interest judgment that exceeded the limits of PLICO's policy.

### SUMMARY

¶ 12 *Carney v. State Farm Auto. Ins. Co.* 1994 OK 72, 877 P.2d 1113, stands for the proposition that an insurer should not generally be held liable for prejudgment interest in excess of its policy's limits. There we held that subjecting an insurer to such liability "would be to force an insurance company to acquiesce to a plaintiff's demand at an early stage of the proceedings where it may have a meritorious defense ..." Here, the insured, Dr. Henry, exercised his right to direct PLICO not to accept the plaintiff's offer to settle within the limits of the policy and thereby assumed responsibility to pay any judgment in excess of his policy's limits. Under such circumstances plaintiff has no basis for claiming that PLICO should be liable to her for prejudgment interest beyond the limits of its policy with Dr. Henry simply because PLICO might have agreed with Dr. Henry's decision not to settle. Plaintiff's judgment was against Dr. Henry and Dr. Henry's decision not to settle left him, as the judgment

---

**3.** We said in *McDonald:*

For its exoneration of liability for prejudgment interest insurer presses Carney v. State Farm Mut. Auto. Ins. Co., 877 P.2d 1113, 1119 (Okl. 1994). Settled by *Carney* was the insurer's liability for prejudgment interest that, together with the amount of the judgment, *exceeded* the coverage limit. The question we resolve today is not the same ...

[Emphasis by the Court.] *McDonald* at note 9.

debtor, liable to pay it to the extent it exceeded the limits of his insurance policy. Plaintiff was entitled to no more.

¶ 13 Our opinion in *McDonald v. Schreiner*, 2001 OK 58, ¶ 2, 28 P.3d 574, 575, is inapposite to the facts of this appeal. In *McDonald* we answered a narrow certified question of state law propounded to us by the 10th Circuit. Our answer to the 10th Circuit's question expressly applied only in situations "where the insurer has complete control of litigation." We need not decide here whether the language of PLICO's policy would have included payment for prejudgment interest in excess of policy limits because Dr. Henry assumed the risk of an excess award by directing PLICO not to settle within the limits of the policy. Further, we did not hold in *McDonald* that prejudgment interest is an element of damages. Indeed, we expressly held that prejudgment interest "constitutes an expense incident to the chosen course of litigation." *McDonald* at ¶ 8.

**JUDGMENT OF THE TRIAL COURT REVERSED WITH INSTRUCTIONS TO SET ASIDE ITS ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, DENY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, AND GRANT PLICO'S MOTION FOR SUMMARY JUDGMENT.**

OPALA, V.C.J., HODGES, LAVENDER, KAUGER, WINCHESTER, JJ., concur.

BOUDREAU, J., concurs in result.

HARGRAVE, EDMONDSON, JJ., disqualified.

1.  *See McDonald v. Schreiner*, 2001 OK 58, 28 P.3d 574, where the court answered a question of state law certified to it by the federal court.

2.  *McDonald, supra* note 1 at ¶ 7, at 577.

3.  "Prejudgment interest obligation is (a) a *consequence* of delay caused by the decision to defend against the claim, (b) *constitutes* an expense incident to the chosen course of litigation, and (c) *presents* a recovery component that stems directly from the insurer-adopted set of forensic strategy choices. All of the litigation-

OPALA, V.C.J., concurring.

¶ 1 The court today (1) **reverses the summary adjudication** that favors the plaintiff in a postjudgment garnishment proceeding in which the trial court ruled the medical malpractice insurer to be liable to the plaintiff for the entirety of prejudgment-interest award against the defendant physician, even though the amount of that recovery, when added to the judgment, exceeded the insurer's policy limits, and (2) **remands the proceeding with directions to enter a postjudgment order** in favor of the insurer.

¶ 2 Although I join the court's opinion without any qualification, I write separately to clarify *McDonald's*[1] impact on today's treatment of prejudgment interest as an inseparable component of recovery.

**I**

**THE GENERAL RULE—PREJUDGMENT INTEREST IS AN INSEPARABLE COMPONENT OF RECOVERY**

¶ 3 Statutorily authorized prejudgment interest is an **item of recovery** that constitutes an integral part of the judgment debtor's total adjudged liability.[2] It stands in the law as an item of damages owed for the delayed satisfaction of an obligation on which it accrues.[3] Because **prejudgment interest, which represents here an amount in excess of the insurer's liability limits, is an inseparable part and parcel of recovery,** I concur in the court's pronouncement that the insurer cannot be made accountable for its satisfaction.

attendant expenses are within the direct and exclusive control of the insurer. The latter party investigates the claim and chooses whether to settle or defend it. Delay is a product of the insurer's will and conduct. The longer the delay, the more prejudgment interest accrues. Without an obligation for that interest insurers would be provided with incentive to prolong litigation in order to take advantage of the time value of money still in their hands." *McDonald, supra* note 1, at ¶ 8, at 577–78 (footnotes omitted).

## II

### THE *MCDONALD* EXCEPTION TO THE GENERAL RULE

¶4 *McDonald* is consistent with today's pronouncement. It teaches that prejudgment interest may be regarded as a "claim expense" (within the terms of a policy) when the insurer, who controls the investigation, defense and appeal of a lawsuit, delays the lawsuit's termination by vacillating between going forward and paying the loss and attempting to defeat liability.[4] In *McDonald* the certified facts submitted to this court unequivocally supported our treatment of prejudgment interest as a claim expense.[5] In short, *McDonald* is to be viewed as an exception to the general rule. It was there warranted by the undenied facts about the insurer's trial-strategy choices.

## III

### THIS CASE PRESENTS FACTS UNEQUIVOCALLY WARRANTING THE COURT'S APPLICATION OF THE GENERAL RULE.

¶5 Unlike in *McDonald,* the liability for prejudgment interest is in this case utterly unclouded by adverse actions of the insurer as *dominus litis.*[6] By the explicit terms of the policy, the insured, who had the right to disapprove any settlement offer, was twice extended an opportunity to settle the controversy for the liability limits of the policy—the first of these occurred one year before the trial and the second at mid-trial. Because the defendant refused both offers, prejudgment interest in excess of the policy limits must fall on him as the insured.

---

4. *McDonald, supra* note 1, at ¶¶ 7–8, at 577–78.

5. The insurance policy's terms in *McDonald* reveal the presence of insurer's absolute control over the course of the litigation. The *McDonald* policy stated in pertinent part:

   We have the right and will defend any claim. We will:
   1. do this even if any of the charges of the claim are groundless, false, or fraudulent;
   2. investigate any claim as we feel appropriate
   3. not settle any claim without your consent. *Supra* note 1, at ¶ 9, at 578.

6. Literally translated, *dominus litis* means master of the suit, *i.e.,* one who by law is entitled to manage and control the litigation to the exclusion of others. BLACK'S LAW DICTIONARY 437 (5th ed.1979).